Wheeler, J.
The instructions of the court, which are assigned as error, are presented by a hill of exceptions which appears to have been filed on the day after the trial, and it is insisted on behalf of the defendants in error that they are not, therefore, properly the subject of revision.
It doubtless is true that a party who would except to the ruling of the court upon any question of evidence arising at the trial must do so at the time of such ruling. And a bill of exceptions ought to be tendered at the trial, or at as early a period as practicable. (6 Johns. R., 279; 9 Id., 345 ; 4 Tex. R., 170; 5 N. H. R., 336.) But there appears to have been some diversity of decisions and practice in different courts respecting the time at which exceptions to a charge of the judge must he taken. In Pennsylvania it has been held that unless exceptions to a charge are taken at the time of trial, with a request *162 that they may be filed, they are not a ground for assigning error, though after-wards filed by the judge at the request of the party. (5 Watts R., 69.) And in one case in New York it was held that an exception to the judge’s charge-will not be received after the jury have withdrawn. (7 Wend. R., 34.) But in Connecticut the court will not reject a bill of exceptions to a judge’s charge-merely because it was not, filed till after the verdict, no specified time being fixed by law. (9 Conn. R., 545.) And in Massachusetts it is said that it is-seasonable if exceptions to instructions to the jury are first alleged after the verdict is returned. (3 Pick. R., 173.) In New York, Pennsylvania, and Kentucky a bill of exceptions, tendered after the jury have returned into court’ with their verdict, but before it is delivered, has been held to be in season as to any charge of the judge, though not as to any question of evidence arising on the trial. (1 Binn. R., 38; 4 Dall. R., 249; 8 S. and R., 211; 10 Johns., 212 ; 5 Mour. R., 177.)
In our practice the parties are required to submit to the court in writing such instructions as they may desire, which the court will give or refuse, and as to these no formal bill of exceptions is necessary. (Acts of 1846, p. 390, sec. 100.) If in the charge of the court there is anything to which either part}*- desires to except, it will be in time to indicate his exception as soon as the jury shall have retired ; and the instructions indicated, when reduced to writing and signed by the judge, may be filed at anytime during the term and made a part of the record. The whole term is allowed for reducing to form the statement of facts. No reason is perceived why the same period may not also be-given for placing upon the record the instructions of the court, provided the exceptions to them were taken in time. It is the common practice, where exceptions were taken during the trial, to reduce to form and sign the bill of exceptions afterwards. (4 How. Miss. R., 272.)
It appears that the defendant in this case excepted to the instructions, and although they do not appear to have -been filed until the day after the trial the presumption is that the exceptions were taken in due timo, and that the judge took until the following day to reduce them to writing. This it was-competent for him to do, and we are of opinion that they constitute properly a part of the record before us for revision.
The first objection, indicated in the order in which they have been presented in the argument of counsel for the plaintiff in error, goes to that portion of the charge in which the court instructed the jury in effect that the mortgagee could-not make an absolute sale of the property'until the mortgagor’s right of redemption was barred; that it would not become barred under twenty years, and that no sale made to one with notice of the mortgage would be valid unless-made by judicial authority.
The first branch of this instruction, (omitting for the present what was said upon the subject of the limitation of the right of redemption,) as a legal proposition, was certainly correct. The mortgagee may assign and transfer the mortgage, and this proposition was not denied by the judge. He was speaking not of an assignment of the mortgage, but of a sale of the property; and bis language could have conveyed to the understanding of the jury no other idea than that of an absolute sale.
The last branch of this instruction — that is, as to the right of the pawnee or mortgagee to sell the pledge — was the subject of consideration, in reference to-the English law, in the case of Luckett et al. v. Townsend et al. (3 Tex. R., 119.) it is unnecessary in the present case to inquire whether by the common or Spanish civil law the pawnee or mortgagee of a chattel can sell otherwise than by a judicial sale. By neither could lie sell at private sale or without the observance of certain prescribed conditions and formalities. (2 Kent. Comm., 582, 583, and notes; 5 Partida, tit. 13, L. 42.) No other than a private sale was relied on or is pretended in the present ease, and the effect of the instruction was that such a sale was not valid and effectual to pass the *163 absolute, ultimate title and right in the pledge to a purchaser with notice. This proposition was true; and it was an immaterial inquiry whether any and what other character of sale would have passed the title, none other being asserted.
This appears to have been the ease of a pledge without any time limited for the redemption. Where a stipulated time is fixed for the payment of the debt, “if (says Story) the pawnee does not choose to exercise his acknowledged right to sell, he still retains the property as a pledge, and upon a tender of the debt, he may at any time be compelled to restore it, for prescription or the statute of limitations does not run against it.” (Story on Bailm., sec. 346.) “The Roman law (he adds) also has declared that prescription shall not run against the pawnor in respect to the pawn, for the pawnee is always considered to hold by his title as such until some other title supervenes.” “Nevertheless, where the title of the pawnee lias remained undisturbed for a great length of time, it seems that such an extraordinary prescription may be insisted on as a bar for the sake of the repose of titles founded on long possession.” (Id., sec. 347.) “But where no time of redemption is fixed by the contract, there, upon the general principles of law, the pawnor has his whole life to redeem, unless he is quickened, as he may be by the pawnee, through the instrumentality of a court of equity, or by notice in pais to the party.” And should the pawnor die without having redeemed, the right to do so will descend to his legal representatives. (Id., sec. 348; 2 Kent Comm., 581, 582; Angell on Lim., 500.) The right of the pawnor to redeem in this case was recognized by the pawuee shortly before his death, and by his administrator afterwards. There was no act of either which indicated an intention to hold adversely to the right of redemption. Prescription did not commence to run against the right of redemption in the lifetime of Richard Thurmond, the ancestor of the plaintiffs. Until after his death there was no act or pretension adverse to his right of redemption. If the defendant claimed merely as assignee of the pawn, lie must be deemed to have taken under all the responsibility of the original pawnee; (2 Kent, 579;) and not having instituted any proceeding, or given any notice to redeem, prescription or the statute of limitations did not run in his favor. In this view of the defendant’s case, supposing him to have claimed merely as the assignee of the pawn, the instruction of the court respecting the time requisite to bar the plaintiffs’ equity of redemption was wholly immaterial. No time whatever had ruu against them which could possibly have availed the defendant under any law of prescription.
But the defendant may have intended to rely upon adverse possession, with a claim of absolute property, commencing at the date of his alleged purchase from Oakley in the year 1832, or at the time of the alleged acquisition of possession by himself and Oakley in 1829. His plea does not allege that his title is adverse to the rights of the plaintiffs, or in what manner it had its origin. But it has been treated in argument as asserting in the defendant an adverse possession, and may be so considered, for the purpose of disposing of the remaining portion of the charge of the court upon the subject of the statute of limitations.
It is admitted that Richard Thurmond, the ancestor of the plaintiffs, died in 1828. The defendant does not claim to have obtained possession of the negro in controversy until some time in the year 1829. The English and American statutes of limitation generally contain a saving in favor of those persons who were laboring under the disability of minority when the cause of action accrued. (Angell on Lim., 203; Acts of 1841, p. 166, see. 11.) The common law limits the period of minority to twenty-one years. The laws of Spain declare that “a minor under twenty-five years cannot lose his property by prescription. (3 Partida, tit. 29, l. 8.)
The proof in respect to the plaintiffs was that the oldest was born in the year 1823'or 1824. He did not arrive at majority until some time in *164 1844 or 1845; and this suit was commenced on the 4th day of January, 1845. The plaintiffs, then, were minors when the possession of the defendant is alleged to have had its commencement; and by no law which may be supposed applicable to the case did prescription commence to run against them until after the removal of the disability of infancy. Between that period and the commencement of this suit a sufficient period did not intervene by the provisions of the act of 1841, then in force, to bar their right of action. Prescription or the statute of limitations, therefore, had no application to the case in any aspect in which it can be viewed. It could not possibly have shielded the defendant under any instruction which the court might have given.
It undoubtedly-is in general true that under the English and American acts of limitation it is held that where the statute has once commenced to run it will continue to run, notwithstanding any subsequent disability of the party entitled to sue, and in so far as to the instructions contravened that principle, they were in the abstract erroneous. But, as in this case, the statute had not commenced to run, it was an immaterial error — one which cannot have prejudiced any right of the defendant, and cannot, therefore, afford a ground for reversing the judgment.
But it is said the plaintiffs have admitted in their petition that the negro came into the possession of the defendant’s intestate in 1828. The plaintiffs do so allege, but they also allege that it was after the death of Richard Thurmond. The pleadings and evidence conclusively fix the commencement of the defendant’s possession at a period subsequent to the decease of the ancestor of the plaintiffs, but at what precise point of time is left uncertain by the evidence, and is immaterial. The material fact in reference to prescription or the statute of limitations, as applicable to this case, is the date of the commencement of the defendant’s possession, in its relation to the time of the death of Richard Thurmond, and that is placed beyond a question at a period subsequent to that event, and consequently, when time did not run against the plaintiffs.
The remaining objection is to that portion of the charge which relates to the testimony of the witnesses Hubbard and Morrison.
In reference to the testimony of the witness Ilubbard, the charge was, in effect, that, iu the opinion of the court, it was too in definite and uncertain to prove anything material to the issue; lienee, that it was irrelevant; and we are of the same opinion. If there was any error in the ruling of the court respecting this testimony, it was in permitting it to go to the jury; but of this the defendant cannot complain, as it was introduced by him.
In respect to the testimony of the other witness, Morrison : The instruction of the court merely indicated to the jury that it might be considered by them in connection with and as explanatory of the giving of the instrument of sale or release made by the witness, and under which the defendant claimed. In this there was no error. The court did not undertake to instruct the jury, as to the weight to be given to the evidence, but merely to inform them of the application they were at liberty to make of it. Both the instrument of release and the testimony of the witness Morrison were introduced in evidence by the defendant. Both related to the same transaction and established the same facts; they proved that Morrison did not assume to make an absolute sale of the property, but merely, as the administrator of Campbell, to release in favor of the pawnor the negro pledged to his intestate, and that the defendant Jones acquired his pretended title with a full knowledge of the pledge and of the character of the title. This was the defendant’s own testimony, and there was nothing in the instruction complained of which could have had a tendency to mislead the jury as to its import or to prevent them from giving it all the weight to which it was entitled.
Upon the whole we conclude that although the court may have mistaken the law upon certain points not properly presented by the pleadings and evidence in the case, yet there was no error in the charge in respect to any matter *165 which was at all material or which could in any manner have prejudiced the defendant’s rights. And we have repeatedly decided that an erroneous instruction upon an abstract question, one which was not properly involved in the ease., and which could not have prejudiced the rights of the party, will not authorize a reversal of the judgment. (2 Tex. R., 297, 305; and see 2 How. U. S. R., 457; 1 McLean R., 509; 9 Cow. R., 674; 1 Por. R., 139; 4 Ham. R., 79, 388; 1 Cr. R., 318; 1 Scam. R., 407; 2 Pike R., 133.)
We are of opinion that the judgment he affirmed.
Judgment affirmed.