WILLIAM ST. JOHN, M. H. DOW, AND WILLIAM O. ST. JOHN, v. JOHN A. KIDD AND P. G. MYERS.

TECHNICAL OBJECTIONS TO THE TRANSCRIPT.—If a case is submitted on its merits by consent of counsel, this submission, even if made before the day the case is set for argument, is a waiver of technical objections to the transcript.

EXCEPTIONS TO CHARGE OF COURT.—The one hundred and eighty-eighth section of the Practice Act does not fix the precise time when an exception to the charge of the Court to the jury must be taken.

DISCRETION OF COURT IN ALLOWING AN EXCEPTION.—If an exception to the charge of the Court to the jury is taken after the jury have withdrawn to consider of their verdict, and before the verdict is rendered, the question of allowing or disallowing the exception rests in the discretion of the Court, and whether allowed or disallowed, the Supreme Court will not interfere with the exercise of this discretion.

CONVEYANCE OF MINING CLAIMS.—Mining claims may be conveyed by bills of sale or instruments in writing not under seal; and such conveyances have the same force and effect as *prima facie* evidence of sale as if made by deed under seal.

BILL OF SALE OF MINING CLAIMS AS EVIDENCE.—A bill of sale of a mining claim executed by three grantors is admissible in evidence, if the execution of only two of the grantors is proven. If the execution of the third grantor is not proven, the failure to make this proof should be taken advantage of by asking the Court to instruct the jury to disregard it so far as it purports to convey the interest of the person whose signature is not proven.

DISTRICT RECORD OF SALE OF MINING CLAIMS AS EVIDENCE.—The entry of the sale of a mining claim made by the Recorder of a mining district, in a book kept for the record and transfer of mining claims, and authorized by the mining customs and laws in force in the district where the claim is situated, is admissible in evidence to prove the sale of the claim, unless objected to. Such entry is at least secondary evidence of the sale.

FORFEITURE OF RIGHT TO HOLD A MINING CLAIM.—The term forfeiture, as used in our mining customs and codes, means the loss of a right, previously acquired, to mine a particular piece of ground by neglect or failure to comply with the rules and regulations of the bar or diggings in which the ground is situated.

ABANDONMENT OF A MINING CLAIM.—Abandonment in its common law sense is purely a question of intention. An abandonment takes place when the ground is left by the locator without any intention of returning or making any future use of it, independent of any mining rule or regulation.

FAILURE TO COMPLY WITH LOCAL CUSTOMS IN WORKING MINING CLAIMS.—A right to hold and work a mining claim when acquired may be lost by a failure or neglect to comply with the rules and regulations of the miners, relative to the acquisition and tenure of claims, in force in the bar or diggings where the claim is located; and if such rules and regulations are not complied with by those holding claims in the district, the ground becomes once more open to the occupation of the next comer.

APPEAL from the District Court, Eleventh Judicial District, El Dorado County.

In the course of the trial, plaintiffs offered in evidence the following bill of sale:

"This is to certify, that we have this day sold to Wm. St. John, the undivided one half of four claims situated on Wild Goose Flat, and known as the St. John Claims, of two hundred feet square, for the sum of two hundred and fifty dollars, the receipt of which is hereby confessed; together with the tools and sluices.

"WILD GOOSE FLAT, February 7th, 1857.
                    "S. J. SWEET,
                    "EARL J. BARNEY,
                    "D. E. JONES, (by power of attorney.)"

Sweet, the witness, proved his own signature and that of Barney; but as to the signature of Jones, stated that at the time of the sale Jones was in the East, but Barney was his agent, with written power to sell, and that Barney signed Jones' name to the bill of sale, and that witness did not know where the power of attorney was.

Defendants' attorney objected to its introduction as evidence because not under seal, and further objected to it so far as it affected the interest of Jones.

The Court overruled the objection.

The other facts are stated in the opinion of the Court.

*P. L. Edwards*, for Appellants.

*Tuttle & Hillyer*, for Respondents.

By the Court, Sanderson, C. J.

The respondents make certain technical objections to the record in this case, which come too late. The case was decided upon its merits by the late Supreme Court, and thereafter upon petition that Court granted a rehearing; but after the rehearing was had the record became lost and no final decision was made. At the April term of this Court the appellants, with the consent of the respondents, were allowed to file the present transcript to supply the place of the former. In view of the history of the case it can hardly be presumed that the defects insisted upon, if they existed in the old record, were not in some way disposed of before the merits were reached, either by an adverse decision of the Court or an express or implied waiver on the part of the respondents. Moreover, if the case was now before the Court for the first time, these objections come too late. The case was submitted upon its merits on briefs by consent of parties, without any exception being taken to the transcript, and it makes no difference that such submission was made prior to the day on which the case was set for argument. Technical objections to the transcript, not taken before the final submission of the case upon

its merits, regardless of the time when submitted, must be considered as waived.

The action was brought to recover the possession of a mining claim. The plaintiffs aver title, possession and ouster in the usual form. The defendants specifically deny all the material averments in the complaint, and affirmatively aver a forfeiture and abandonment by the plaintiff under the mining laws of the district embracing the claim, and that thereafter, finding the premises vacant and unappropriated, they lawfully entered and occupied the same. The trial resulted in a verdict and judgment for the plaintiffs. The exceptions are to the admission of evidence, and to the giving and refusing of instructions.

It is insisted by counsel for respondents that the exceptions to the instructions must be disregarded, because the same were not taken at the proper time. The record shows that the exceptions were taken after the jury had withdrawn to consider of their verdict and before the verdict was rendered. In support of this proposition *The Life and Fire Insurance Company* v. *The Mechanics' Fire Insurance Company*, of New York, 7 Wend. 31, decided at the May term, 1831, is cited. In that case, as in the present, an exception was taken to the charge of the Court after the jury had withdrawn and before they had returned with their verdict. The Court refused to allow the exception upon the ground that it came too late and should have been taken, if at all, before the jury had withdrawn. On appeal this action of the Court below was sustained by the Supreme Court. Yet the same Court, but a little more than a year afterwards, at the October term, 1832, in *Wakeman* v. *Lyon*, 9 Wend. 241, where the bill of exceptions expressly stated that the exception to the decision of the Judge was taken after the verdict was delivered, said: " We will presume that the exception was taken in due time unless it is expressly shown that it was not taken until after the verdict. We do not regard the manner in which the proceedings on the trial are stated in the bill, and so we have repeatedly ruled." In *Jones* v. *Thurmond's Heirs*, 5 Texas, 318, it was held that

if there is anything in the charge of the Court to which either party desires to except it is in time to indicate the exception as soon as the jury shall have retired, and the exceptions so indicated may be reduced to writing and signed by the Judge during the term. In *Jones* v. *Van Patten*, 3 Ind. 107, and *Roberts* v. *Higgins*, 5 Ind. 542, it was held that exceptions to the instructions of the Court must be taken before the jury render their verdict, or they will be disregarded by the appellate Court. The same doctrine was announced in *Letter* v. *Putney*, 7 Cal. 423. While the last three cases do not directly decide the point under consideration, yet they obviously imply that an exception to the instructions of the Court is well taken, if taken at any time, before the verdict is rendered.

The one hundred and eighty-eighth section of the Practice Act thus defines an exception : "An exception is an objection taken at the trial to a decision upon a matter of law, whether such trial be by jury, Court or referees, and whether the decision be made during the formation of a jury, or in the admission of evidence, or in the charge to a jury, or at any other time from the calling of the action for trial to the rendering of the verdict or decision."

This section does not in terms fix the precise time at which an exception must be taken, but it implies, we think, that the exception should be taken at the time the ruling is made, that is to say, before any further steps are taken or progress made in the trial, and in time to enable the opposite party or the Court, as the case may be, to remedy the objection if it be deemed a substantial one. The question is doubtless one which rests very much in the discretion of the Court below, and which the District Courts might regulate by a rule, as provided in the twenty-eighth section of the Judiciary Act. In the present case the Court below allowed the exceptions, and we think it was not error to do so, and, had the Court refused to do so, we should have been of the same opinion.

It appears from the evidence that the plaintiffs, with the exception of William O. St. John, did not seek to recover upon the ground of a location by themselves, but by virtue of a

location made by others and a purchase from them. The ground seems to have been located in 1854 by Randall, Sherman, Rogers and Martin. Randall sold to Jones & Co., in December, 1854. Sweet, Barney and Jones constituted the firm of Jones & Co. What became of Sherman's, Rogers' and Martin's interests does not appear. One of the witnesses heard one Perry making a bargain with either Sherman or Rogers for his interest, but when and with what result does not appear. The ground appears to have been relocated in March, 1855, by Sherman, Perry, Jones and William O. St. John, one of the plaintiffs in this suit. This location was entered in a book kept by the Recorder of the district under the mining rules in force therein. By an entry in the same book it appears that Perry's and Jones' interests were transferred to William St. John, another of the plaintiffs in this action, on the 7th of February, 1857. By another entry in the same book it appears that Sherman's interest was transferred to William H. Dow, the other plaintiff in this action, on the 13th of January, 1860.

The exceptions taken to the admission of evidence all relate to the testimony which was offered for the purpose of proving title under the first location, and the sales thereafter made by the then locators, except the one taken to the bill of sale from Jones & Co. to William St. John, made on the seventh of February, 1857. As we understand the evidence, which we confess as presented in the record, is somewhat obscure, this latter bill of sale is of the interest which Jones & Co. acquired under the second location, and not of that purchased by them of Randall, which he held under and by virtue of the first location. Aside from this last exception, we deem discussion unnecessary, for the reason that under the view which we take of this case the rulings of the Court below upon the evidence relating to the title derived under the first location, whether erroneous or not, become immaterial, for the reason that they could not have possibly affected the verdict. So far as the plaintiffs attempted to derive title from the first location and the transfers under it, they, in our judgment, utterly failed. But under the second location, as we shall presently see, they

made a clear title under the mining rules and regulations by evidence, which was not objected to by the defendants. This latter evidence is amply sufficient to sustain the verdict, so far as the question under consideration is concerned. And it is clear that the jury based their verdict upon this latter title, so to speak, and were not misled by the evidence or rulings of the Court touching the former.

The exception to the bill of sale from Jones & Co. to William St. John was not well taken. The grounds of the exception were, first, that the bill of sale was not under seal; and, second, that it purported to be executed by Jones, one of the grantors, by his attorney in fact, who it was shown had at the time a written power which was not produced at the trial. The first objection is answered by the statute concerning the conveyance of mining claims (Statutes of 1860, p. 175) which provides that mining claims may be conveyed by bills of sale or instruments in writing not under seal, and that all conveyances of mining claims heretofore made by bills of sale or instruments in writing not under seal, shall have the same force and effect as *prima facie* evidence of sale as if they had been made by deed under seal. The second objection does not go to the admissibility of the bill of sale, but to its effect when admitted. It was the bill of sale of Sweet and Barney as well as Jones. Its execution by Sweet and Barney was fully proven, and that was sufficient to entitle it to admission. If its execution by Jones was not proven, counsel for the defense should have asked the Court at the proper time to so instruct the jury, and direct them to disregard the bill of sale so far as it purported to convey the interest of Jones, and if the Court refused, taken his exception. Such is the only way in which, under the circumstances, counsel could have made the point which he sought to make by his demurrer to the evidence. But this course was not pursued, there being no exception except to the ruling of the Court admitting the bill of sale in evidence, which ruling, as we have seen, was correct.

But if there was a failure of proof as to the sale by Jones,

so far as the bill of sale itself was concerned, the failure was remedied by other evidence offered by plaintiffs, which, although perhaps of a secondary character, was not objected to by the defendants, and which, in our judgment (independent of all the other testimony), not having been objected to, made a *prima facie* case for the plaintiffs, and put the defendants upon their defense.   A book, to which we have before referred, purporting to be a book for the record and transfer of mining claims, and shown to have been authorized by the mining customs and laws in force in the district where the claim in controversy was situated, was offered in evidence by the plaintiffs, and admitted without objection on the part of the defendants. From this book three entries were read to the jury by the plaintiffs.   The first showed a location of the ground in question on the tenth of March, 1855, by Sherman, Perry, Jones and William O. St. John, one of the plaintiffs.   The second showed a transfer by Perry and Jones to William St. John, another of the plaintiffs, on the seventh of February, 1857. The third and last showed a transfer by Sherman to Dow, the only remaining plaintiff, on the thirteenth of January, 1860. Thus, the title or right acquired by the second location on the tenth of March, 1855, according to this book, became vested in the plaintiffs prior to the alleged entry and ouster of the defendants, which took place on the twentieth of March, 1860. This book was at least secondary evidence of the appropriation of the ground and its conveyance to plaintiffs, and not being objected to on the ground that it was secondary, of itself made out the plaintiffs' case under the mining laws of the district, and put the defendants to the proof of the plaintiffs' forfeiture or abandonment under the same.

We now come to the exceptions to the giving and refusing of instructions.

The defendants relied upon an alleged forfeiture or loss of the right to mine the ground on the part of the plaintiffs, if they had ever acquired such a right, by a failure to work the ground and keep the right alive, as required by the mining rules and regulations in force in the district.   And that, by

such neglect and failure on·their part, the ground, at and prior to the defendants' entry, had become again, as it was prior to the location under which plaintiffs claimed, *publici juris*, and open to their occupation. In support of this defense the book before referred to, containing the rules and regulations of the district,· was offered in evidence by the defendants, accompanied with testimony tending to show that plaintiffs had failed and neglected to comply therewith, and had therefore failed to keep alive their alleged right to mine the ground in question.

Without noticing in detail the instructions of the Court, it is sufficient to say that the jury were instructed in effect that if they found from the evidence that the plaintiffs had acquired a right to mine the ground in controversy prior to the entry of the defendants, that right could not be divested by a noncompliance on their part with any rules or regulations adopted by the miners; but that such rules and regulations might be considered by them in connection with the other evidence for the purpose of determining whether or not the plaintiffs had abandoned their claim. We understand the learned Judge of the Court below to have here used the term forfeiture in its mining law sense, and the word abandonment in its common law sense. Such being the case, the jury were, in effect, instructed that there was not, and could not be, any such thing as a forfeiture under mining rules and regulations, and if so, the instruction was undoubtedly erroneous.

The term forfeiture as used in our mining customs and codes means the loss of a right to mine a particular piece of ground, previously acquired, by neglect or failure to comply with the rules and· regulations of the bar or diggings in which the ground is situated, prescribing the acts which must be done in order to continue and keep alive that right after it has been once acquired. As a defense it is entirely distinct and separate from that of abandonment. It involves no question of intent, but rests entirely upon the mining rules and regulations, and involves only the question whether, in point of fact, those rules and regulations have been

observed by the party seeking to maintain or perpetuate the right, regardless of what his intentions may have been. Whereas the principal question involved in the defense of abandonment is one of intention. Was the ground left by the locator without any intention of returning, or making any future use of it? If so, an abandonment has taken place upon common law principles, independent of any mining rule or regulation, and the ground has become once more *publici juris* and open to the occupation of the next comer.

That the miners may make rules and regulations to govern the acquisition and tenure of mining rights has been expressly and, in our judgment, wisely declared by the Legislature, with the further declaration that such rules and regulations shall be admitted in evidence and shall control the decision of mining controversies. (Prac. Act, Sec. 621 ; *Morton* v. *The Solambo Mining Company*, decided at the present term.)

Judgment reversed and new trial ordered.