KING et al., appellants, *v.* EDWARDS et al., respondents.

MINING CUSTOMS — *effect on common law.* The rules and customs of miners in a particular district are laws, and constitute the American common law on mining for precious metals.

MINING CUSTOMS — *location of mining ground.* The rules and customs, which point out the manner of locating mining ground, are conditions precedent, which must be substantially complied with.

MINING CUSTOMS — *forfeiture presumed when miners fail to work their claims.* The rules and customs of miners, that require locators to do a certain amount of work upon their claims, are conditions subsequent; and the law presumes that such locators forfeit their rights to possess and mine the same by a failure to comply therewith, although no penalty is specified in such rules and customs.

MINING CUSTOMS — *re-location of forfeited mining claims.* Mining claims, which are forfeited, can be re-located by any person who complies with the rules and customs of the district in which they are situated.

MINING CUSTOMS — *construction of mining rules by courts.* Courts must construe mining rules and customs and require the owners of mining ground to develop and work it, if consistent with law.

MINING CUSTOMS — *rules of a district not varied by those of another.* The rules and customs of the miners of one district cannot be introduced to vary those of another district.

MINING CUSTOMS — *mining laws presumed to be in force.* It is presumed that the written laws of a mining district are in force, and any custom that conflicts with them must be clearly proved.

MINING DISTRICTS CHANGED — *vested rights.* The extent of a mining district may be changed by those who created it, if vested rights are not thereby interfered with.

MINING RULES — *representation of mining ground by labor and a bed-rock — flume.* All mining rules and customs must be reasonable. Those which compel persons to perform labor in the district to represent their mining ground, which cannot be profitably worked without running a bed-rock flume to it from another district, are unreasonable.

## *Appeal from the Third District, Meagher County.*

IN May, 1869, King and Gillett filed their complaint against Edwards and ten others, including John Doe and Richard Roe, in the district court in Meagher county. The cause was tried by a jury in November, 1869, before SYMES, J., and a verdict was returned for defendants. The facts are stated in the opinion.

WOOLFOLK & TOOLE, for appellants.

There was no evidence that appellants had abandoned the ground in controversy. The laws of German district, even if in force, make no provision for a forfeiture, but were designed to make representation easy instead of difficult. *McGarity* v. *Byington*, 12 Cal. 426; *Colman* v. *Clements*, 23 id. 248; *Bell* v. *Bed Rock T. & M. Co.*, 36 id. 217.

No witness swore that the laws were in force. The record shows that there had been a dispute for three years past, as to what laws were in force. Acts Montana, 1865, 169, § 634.

The questions of abandonment and forfeiture, under the laws of German district, were the only issues raised by the pleadings. The record shows that appellants introduced evidence, that a custom had grown up in German district,

permitting representation of ground by work outside of the district, as in cases of flumes or drain ditches. The respondents sought to prove that there had been no such custom, as there had been no such case before in the district. Not one of respondents' witnesses asserted that there was any custom in the district, making a forfeiture, when ground was represented in the manner that appellants represented their ground. Not one of respondents' witnesses testified to any fact creating a custom, but simply gave their own opinion as to what was or was not the custom. Such evidence could not establish a custom or disprove one. 2 Greenl. Ev., §§ 250, 252 ; 1 Black. Com. 76, 77.

The court erred in admitting the resolutions offered as the laws of German district. *English* v. *Johnson*, 17 Cal. 107.

The court erred in refusing to allow certain questions to be put to the witnesses, Kane and Woods. It was competent to ask them, on cross-examination, if there was any custom in German district which would prevent representation by bed-rock flume in the district below. 1 Greenl. Ev., § 446, *et seq.;* 3 Estee's Pl. 450, § 49 ; *Jackson* v. *Feather River Water Co.*, 14 Cal. 23. If there was no custom which prevented such mode of representation and subjected the ground to forfeiture, it could not be forfeited. The questions were asked to show that there was no such custom.

The court erred in refusing to permit appellants to show in rebuttal the boundaries of German district at the time of the adoption of the laws. Appellants' witnesses never defined these boundaries. It was clearly competent to show that, at the time of the adoption of these laws, German district embraced appellants' bed-rock flume, and that respondents were seeking to apply old laws or customs to a new district with smaller dimensions than the one first created.

CHUMASERO & CHADWICK, for respondents.

This action is to recover the possession of a mining claim, and is governed by the law applicable to actions of ejectment. The appellants must recover upon the strength of

their own title. The respondents set up as special defenses, abandonment and forfeiture.

The question of abandonment was one entirely for the jury, and, as there was evidence tending to prove the same, the court cannot disturb the verdict. *Depuy* v. *Williams*, 26 Cal. 309; *Roberts* v. *Unger*, 30 id. 676.

The defense of forfeiture of appellants' right to the premises in dispute was clearly established. The evidence showed that they were in the German district; that the miners of that district had adopted certain rules long before appellants claimed this ground; that these rules required a certain amount of work to be done in the district to hold mining ground, and that appellants had failed to perform it. Whether the laws were in force, or whether the appellants had complied with these laws, or whether the ground had been forfeited under the laws as shown by the evidence and the law as given by the court, were questions entirely for the jury to pass upon, and their verdict cannot be disturbed by this court. *Packer* v. *Heaton*, 9 Cal. 568; *St. John* v. *Kidd*, 26 id. 263; *Depuy* v. *Williams*, 26 id. 309; *Morton* v. *Solambo C. M. Co.*, id. 532.

No exceptions to the instructions of the court were taken by either party. The appellants only claimed a possessory right to the ground in dispute, having no title from the government. That right could only be preserved by a compliance with the local mining laws, and, in case of noncompliance therewith, a forfeiture would arise. *Warring* v. *Crow*, 11 Cal. 366; *Gluckauf* v. *Reed*, 22 id. 468; *St. John* v. *Kidd*, 26 id. 263.

If there were no local rules in the district, the ground could only be held by an actual and continuous possession.

Appellants fail to make out any case for a new trial upon the ground of newly-discovered evidence. They show no diligence, and the newly-discovered evidence is cumulative. Gra. & W. New Trials, 473–485.

All questions as to customs or usages in force in the district were properly left to the jury. They were questions

of fact for them to determine, and their verdict cannot be set aside, if it was supported by the evidence.

KNOWLES, J.    This is an action of ejectment brought by the appellants to recover possession from the respondents of certain mining ground, situated in German district, Confederate gulch, Meagher county.

The appellants claim title from those who first located the same.    The respondents claim that appellants forfeited the ground and set up title in themselves.

The law which requires work to be done on mining ground in German district does not provide that a failure to comply therewith shall work a forfeiture of the ground.

The first question presented for us to answer is, whether it is necessary for this law to so provide in order to have this effect.

The mining customs of any particular mining district have the force and effect of laws, or, in other words, are laws. The local courts in each one of the States and Territories, where placer mining is prosecuted to any extent, have so recognized them, and finally, congress, by an act in July, 1866, recognized these rules and customs as law.

The title to mineral lands is vested in the United States. Any citizen of the United States, or any person who has declared his intention to become such, may, by complying with the local rules and customs of any district, become vested with the right to possess and mine any specific portion of mining ground.    The customs which point out the manner of locating mining ground are conditions precedent. A substantial compliance with them is necessary.    The right to possess and mine any mining claim is derived from the United States by virtue of this compliance.    The United States is divested of this right as effectually as if these rules and customs were acts of congress, for they now are the American common law on mining for precious metals.

The regulations of miners which require that so much work must be performed upon each claim are conditions subsequent.    The locator of a mining claim takes subject

to this condition. So long as he complies with it, the right to possess and mine the same remains with him. Whenever a condition subsequent is attached to any right or title vested in a party by virtue of law, it is not necessary that the law should provide that a failure to comply therewith works a forfeiture of the right. Even when a condition subsequent is expressed in a deed, it is not necessary that it be specified that a failure to comply with it entitles the grantor to enter and take possession of the tenements. It is implied that he has this right. 4 Kent's Com. 140.

It is true that, where a mine is forfeited, it becomes forfeited to the United States, of whom the locator derived title. Formerly only the grantor, or his heirs, could proceed for forfeiture; but under the law, as it now stands, an assignee of the rights of the grantor can proceed to declare a forfeiture. 4 Kent's Com. 138, 139.

When mining ground is forfeited by any one, it again becomes unappropriated mineral land of the United States. Any one who relocates it, in accordance with the mining rules and customs of the district in which the same is situated, has the rights of the government, and may proceed to declare a forfeiture, or may set up the defense of forfeiture in an action against him.

From the statement in this case, it would seem that it is conceded that both parties claim by virtue of the local rules and customs of the district where the ground is situated. At all events, as far as the statement goes, they both stand upon the same footing. It is doubtful whether any person could acquire and possess a mining claim, without complying with the local rules and customs upon that subject since the act of congress of July, 1866, upon the subject of mining.

I think I may safely say that this rule in relation to the forfeiture of mining claims is substantially the same as entertained by miners generally themselves. It is not often that a mining law declares that a failure to comply with the one, in relation to working and developing mining ground,

works a forfeiture. Yet it is generally considered among miners, that such a failure will have this effect.

The Spanish edicts upon mining in Mexico, which is the source from which we derived our mining rules and customs, established that all right to mining ground had attached thereto the condition of development. A failure to perform so much work on any mine worked a forfeiture. There a proceeding, in its nature judicial, was always instituted, however, to declare a forfeiture and an adjudication made before the ground was subject to relocation. This, however, in our country, is not necessary. The policy of the government of the United States has been to throw open its mines to its citizens, and to encourage the extraction of as much precious metals therefrom as possible. And observing that miners, by their customs, have attached as a condition to the right to possess and mine any mining ground, that of working the same, they have recognized them. The condition of development should be attached to every mine ; and courts should, as far as consistent with legal principles, maintain the construction of mining customs which accomplish this end.

The decisions in California, which generally deserve great weight upon the subject of mining, are far from being satisfactory upon this one subject — forfeiture of mining ground. Undoubtedly, mining customs should be construed strictly against forfeiture, as laid down in *Coleman* v. *Clements*, 23 Cal. 248. But, where a custom is plain, there is no room for construction, and a court must take it as it reads, and give it its legal effect. The case of *McGarrity* v. *Byington et al.*, 12 Cal. 426, and that of *Bell* v. *Bed Rock T. & M. Co.* certainly lay down a different rule from that expressed here, while *St. John* v. *Kidd*, 26 Cal. 263, lays down the same rule. It is to be observed that the case of *St. John* v. *Kidd* does not purport to overrule that of *McGarrity* v. *Byington et al.* Nor does the case of *Bell* v. *The Bed Rock T. & M. Co.* purport to overrule that of *St. John* v. *Kidd.* The conclusion that we must come to from this is, that this point has never been fully considered by the

VOL. I. — 31.

California courts. No reasoning is given in support of the
rule, in either case, and no authorities; and, hence, it is
impossible to tell how they arrived at their conclusions.
The rule we have expressed we believe is in accordance with
the established principles of law, and comports with the
understanding miners have of their own customs, and is
consonant with the policy of the general government.

The point made by appellants' counsel, that, because there
was a dispute as to what the customs in German district
were, therefore the jury were not warranted in finding a
forfeiture, is not well taken. The record shows that there
was considerable evidence as to what were the customs of
German district. This issue and the one as to what customs
were in force in the district, was properly left to the jury,
and this court must presume that they found the one requir-
ing work to be done in the district, in order to represent a
mining claim in force.

The objection to the questions asked Kane, as "to whether
he knew of any custom within German district which will
prevent the representation of ground in said district, by
work on a bed-rock flume, commenced in the district below,
and as to whether he knew of any custom which had grown
up within the limits of this district, whereby parties were
prohibited from representing mining ground in one district,
by a bed-rock flume started in another, where the bed-rock
flume is to drain and work all mining ground belonging to
the party above the head of the bed-rock flume," were
properly sustained. The written laws of the district, which
presumptively were in force, required work in the district
to represent ground therein. If any other custom had
grown up in that district, allowing parties to represent
ground by work outside of the district, it devolved upon
the appellants to show it, as this would be considered an
amendment to, or modification of, the former custom.

It may be further remarked, in relation to these questions,
that, from all that appears, they are not proper cross-exami-
nation. All that appears from the record, in the examination
of the witness in chief, is, that the witness did not know of

any custom in German district allowing ground to be repre-
sented by work outside of the district, and that he was
familiar with the customs of that district.

There was not sufficient evidence to warrant the court
holding that the jury would be justified in finding that
German district had been abandoned or merged in a gene-
ral district for Confederate gulch, called Confederate district.
Hence, the objections to the third question asked by appel-
lants of Kane, and the one asked O'Brian, in relation to
the customs of Confederate gulch, were properly sustained.
When there are customs upon any one subject in a district,
the parties must be limited to those. The customs of an
outside district could not be introduced to vary them.

The appellants' counsel asked Grubb, one of the defend-
ants' witnesses, the following question : "If a man has a bed-
rock flume in a gulch with which he designs to mine sev-
eral pieces of mining ground in the same gulch, that lie
separate from each other in different districts, do you know
of any custom in German district that requires a separate
flume for each piece of ground to represent the same ?"

The first point that may be noticed in relation to this
question is, that if answered in the affirmative it would
show a custom in German district in relation to what would
be representation in another district, and if answered in the
affirmative, surely the appellants would not have been bene-
fited, as it was not pretended that they had two bed-rock
flumes. If the witness had answered in the negative, I am
still unable to perceive what benefit the appellants would
have derived. The written laws of the district had been
introduced in evidence, and these provided for work in the
district to represent mining ground therein, and as before
remarked, these laws were presumptively in force, and it
devolved upon appellants to show a positive custom allow-
ing them to represent their ground by work outside of the
district. The mere fact that there was no direct mining rule
prohibiting ground from being represented in this way
amounted to nothing. The point they were required to
establish was, that there was a positive custom sanctioning

this kind of representation. A court should not reverse a case unless it appears clearly that the appellant was either actually or presumptively damaged by the error complained of.

The written customs introduced by respondents· were properly received. Sufficient evidence concerning them had been introduced to raise a presumption that they were laws of the district. It is not claimed that they had possession of the other laws of the district and refused to introduce them. It was left to the jury to determine whether they were the laws of the district or not. If they found that they were *prima facie*, they were in force.

The court refused to allow the appellants to introduce evidence to the effect that at the time the laws of German district were established German district was much larger than at present, and embraced where appellants' bed-rock flume is situated.

It will be observed that appellants do not seek by this question to determine the size of the district at the time the mining ground was located by the grantors of appellants, but the size of the district at the time laws were passed. Undoubtedly those who have created a mining district may change its extent so that they do not interfere with vested rights. If these claims were located by those under whom appellants claim subsequent to the change in the size of the district, appellants could not complain, and from all that appears from the record this may have been the case. In conclusion, I may say that where it appears that mining ground could not be worked profitably without going outside the district to run a bed-rock flume or drain race to it, a custom which would require work to be done in the district to represent it, might be considered unreasonable. All mining customs must be reasonable. In this case, however, 1 gather from the whole record that the appellants had mining ground in the district below called Baker district. That the primary object of this bed-rock flume was to work this ground. I do not think any mining custom is unrea-

sonable which requires work to be performed directly in reference to ground in the district in which it is in force.

For these reasons the judgment of the court below is affirmed.

*Exceptions overruled.*