# CANDELARIO VALENCIA AND PAULA VALENCIA, HIS WIFE v. JOHN COUCH.

COMPLAINT IN FORCIBLE ENTRY AND DETAINER. — Forcible entry and forcible detainer are separate causes of action, and ought to be separately stated in different counts in the complaint. If not so stated in the complaint it is bad on demurrer, but if the complaint is not demurred to the objection is waived.

PLEADINGS IN FORCIBLE ENTRY AND DETAINER.—The offenses mentioned in the

Forcible Entry and Detainer Act should be separately stated in the complaint; and fraud, if relied on, should also be separately stated.

AMENDMENT TO COMPLAINT.—If the plaintiff sues upon one only or upon two of the causes of action mentioned in the Forcible Entry and Detainer Act, and the testimony makes a cause of action named in the Act, but not set out in the complaint, it is the duty of the Court on its own motion, or on the motion of the plaintiff, to permit him to amend his complaint to suit the testimony.

AMENDMENTS TO PLEADINGS.—A motion to amend a complaint does not come too late because made after the plaintiff has closed his testimony and the defendant has moved for a nonsuit. A motion to amend is always in time when it immediately follows an objection to the complaint or answer.

POSSESSION OF LOT.—A person has possession of a lot twenty-eight feet by one hundred and thirty-two sufficient to enable him to maintain forcible entry and detainer, if it adjoins a lot on which he lives, and has a stable on it, and he cultivates it, even though the fence inclosing the whole is not very substantial.

ENTRY UPON ANOTHER'S POSSESSION.—One entering upon a lot in the possession of another does not effect a complete entry and acquire possession until he has expelled the party in possession and effected an exclusive lodgment.

FORCIBLE ENTRY.—For the purpose of determining whether an entry is forcible, all that transpires between the parties from the time of the coming of one until the going out of the other is to be taken into account.

WHAT CONSTITUTES FORCIBLE ENTRY.—One who goes to a lot in another's possession, accompanied by several men, and builds a fence around it, while the former possessor is remonstrating, and removes him from the line of the fence where he places himself to prevent the fence from being built, is guilty of a forcible entry.

APPEAL from the County Court, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*W. W. Chipman,* for Appellants, upon the question of the force required to constitute a forcible entry, cited *McCauley* v. *Weller,* 12 Cal. 524; *Milner* v. *Maclean,* 2 Car. & Payne, marg. p. 17; Jacob's Law Dic., Title Forcible Entry; *Fremont* v. *Crippen,* 10 Cal. 214; and *Dickenson* v. *McGuire,* 9 Cal. 49.

*G. F. & W. H. Sharp,* for Respondent, upon the same point cited *House* v. *Kaiser,* 8 Cal. 501; *Thompson* v. *Smith,* 28 Cal. 527; *Polack* v. *McGrath,* 25 Cal. 58; and *Merrill* v. *Forbes,* 27 Cal. 370.

By the Court, SANDERSON, J. :

This action was brought to recover possession of a lot, thirty-eight by one hundred and thirty-two feet, in the City of San Francisco, under the provisions of the Act of the 2d of April, 1866, in relation to forcible entries and unlawful detainers. (Statutes 1865–6, p. 768.) The case was tried by the Court without a jury. At the close of the testimony on the part of the plaintiffs, the defendant moved for judgment of nonsuit. Thereupon the plaintiffs moved for leave to amend their complaint by adding thereto a further or distinct cause of action for a detainer. The latter motion was denied and the former granted. The plaintiffs then moved for a new trial upon a statement first prepared and settled for that purpose. This motion was denied, and plaintiffs have brought the case here by an appeal taken from the order denying a new trial.

On the part of the appellants, it is claimed—first, that the Court erred in denying their motion for leave to amend; and second, in granting a nonsuit.

The original complaint contains but one count in which the possession of the plaintiffs is alleged—a forcible entry by the defendant, a forcible detainer, and a demand by the plaintiffs for the possession, made on the 28th of August, 1866. So far as we have been able to discover, there is no material difference between the averments of the original complaint and those contained in the proposed amendment, except as to the date of the demand, which is stated in the proposed amendment as the 28th of June, 1866; but this must be a mistake, for the entry is alleged to have taken place on the 9th of July, subsequent to the alleged demand, and the notice or demand, which was in writing and is in the record which has been brought up, bears date on the 25th of August, 1866; besides, Cardinell, who served the notice on the defendant, testified that he served it on the 28th of August, 1866. The only object therefore which counsel seems to have had in asking for leave to amend was to state the entry and the detainer in separate counts, as distinct and separate causes of

action, and also to make the complaint conform to every possible aspect of the testimony. We are asked whether, if, in an action of this character, the plaintiff relies upon a forcible entry and also upon a forcible detainer, it is necessary for him to allege them in separate counts, or whether it would be sufficient to allege both in one count in the manner in which they are alleged in the original complaint in this case; and, if it is necessary to state them in separate counts, we are further asked if the plaintiff is not entitled to amend, as a matter of absolute right, under the tenth section of the Act in question, where he has not stated them separately, or where he has failed to state them both, and the testimony shows a right to recover upon the one not stated.

The Act in question expressly provides, that all proceedings for the trial and determination of causes of action, arising under its provisions, not therein provided for, shall be regulated by the provisions of the Civil Practice Act, so far as the same may be applicable, (Sec. 7.) Upon the question in hand the Act is silent, and the Civil Practice Act must therefore supply the rule. Forcible entry and forcible detainer are distinct offenses, or separate causes of action (Secs. 1, 2, 3,) and ought, therefore, according to the provisions of the Civil Practice Act, to be separately stated (Sec. 64.) If not so stated the complaint would be bad on demurrer (Sec. 40,) but if not demurred to the objection would be waived (Sec. 45.) In this case the defendant did not demur. The objection was therefore waived by him, and there was no reason why the plaintiffs should amend for the purpose of stating the entry and detainer in separate counts.

The Act in relation to forcible entries and detainers defines two offenses: First—Forcible entry; Second—Forcible detainer. Of the latter, however, two distinct definitions are given (Secs. 1, 2,) so it may perhaps be more correct to say that the Act defines three offenses, two of which bear the same name. The Act also provides that fraud on the part of the defendant, if it exists, may constitute a special feature of each offense, and that the plaintiff may recover special dam-

ages therefor. (Sec. 5.) We have, therefore, as causes of action, or grounds of relief: First—Forcible entry; Second— Forcible detainer, as defined in the second section; Third— Forcible detainer as defined in the third section; and Fourth— Fraud as an adjunct of each of the former. (Sec. 5.) All may be united in the same complaint, but should be separately stated. If fraud is relied on, the facts constituting it should also be separately stated, for it is a ground for distinct relief. If the plaintiff, however, sues upon one only, and the testimony makes another, or if he sues upon two, and the testimony makes the third, it is the duty of the Court, of its own motion, to order the complaint to be amended to suit the testimony. (Sec. 10.) But if in the opinion of the Judge the testimony makes no case under either, which seems to have been the case here, there is no reason why he should order an amendment, or allow one if asked for. He has the same power over the question which he has over all other questions with which he deals, and is only bound to decide according to his judgment. Undoubtedly the statute is most liberal on the question of amendment, and the Court should not be less, and doubtless if there is any reasonable controversy about what the testimony establishes, the better and safer practice would be to allow counsel to amend so as to be able to present his case in accordance with his own judgment or theory. By such a course no error will intervene and the manifest spirit of the statute will be fully subserved. Moreover, in case of further proceedings on appeal, the case would then come up entire, and on the other hand the amendment, if not demanded by the exigencies of the case, would certainly do no harm. But, as already intimated, we are unable to perceive any necessity for an amendment in this case, arising out of the omission to state the causes of action separately, or out of any supposed variance between the complaint and the testimony, and for that reason we are of the opinion that the Court did not err in denying the motion. The motion to amend, however, did not come too late, as suggested by counsel for defendant, because it was not made until after the

defendant's motion for a nonsuit. A party cannot be deprived of his right to amend because his adversary chooses to take advantage of any defect in his complaint on motion for a non-suit instead of by a demurrer. A proposition to amend is always in time when it immediately follows the objection to the sufficiency of the complaint or answer.

We are of the opinion, however, that the plaintiffs' testimony made a *prima facie* case of forcible entry and that the Court erred in granting a nonsuit.

The actual possession was shown to be in the plaintiffs. They had a stable upon the lot, which was adjoining the lot upon which they were living. The lot was being cultivated by them at the time—in part as a vegetable garden, and its exterior lines were fenced, though not, perhaps, in a very substantial manner. The lot was small, being only thirty-eight by one hundred and thirty-two feet, and if not a part of the plaintiffs' house lot was immediately adjoining it, without any fence between the two. These circumstances, taken in connection with the inclosure, such as it was, the stable upon the lot and the actual cultivation of the lot as a garden, was sufficient to establish an actual exclusive possession in the plaintiffs. On this head we find nothing in the testimony which warrants the theory of defendant, that the possession shown was interrupted and scrambling, within the case of *House* v. *Kaiser*, 8 Cal. 499.

Upon the question of force, counsel for defendant seem to assume that the entry was complete the moment defendant and his party put their feet upon the premises; and inasmuch as that was accomplished without knocking anybody down, or threatening to do so, with a show of sufficient force, the entry must be held to have been peaceable. We do not so understand it. The entry of defendant was not complete until he had expelled the plaintiffs and effected an exclusive lodgment, which was not done until after he had knocked some boards off the fence, with which he had inclosed both the lot and Mrs. Valencia, and let her out with a rap upon her knuckles with his hammer. Until then he had not

obtained an exclusive possession of the premises and the entry was not complete. Until then his entry had been contested by Mrs. Valencia, who had protested against his acts in putting up the fence, and had resisted him so far as a woman opposed by eight men could be expected to do so. Two hostile parties cannot be in possession of the same premises at the same time, and the possession is not changed until the invaders have expelled the former occupants.

For the purpose of determining, then, whether the entry in this case was forcible or not, within the meaning of the statute, all that transpired, between the coming of the defendant and the going of Mrs. Valencia, is to be taken into account.

It appears that Valencia himself left the premises about the time the defendant and his party came. It is true he says, on cross examination, that he did not leave because he was afraid, but, having business somewhere else, he left. Mrs. Valencia, however, remained, so the defendant did not find the place unoccupied. He came attended by six or seven other men. That all did not come for the purpose of building a fence is manifest from the fact that the number was unusually large for that purpose, and the further and significant fact that only two or three of them engaged in that business, while the others seemed to play the part of a body guard. True, some of them appeared to be men " of infinite jest," who found food for fun in the tears and remonstrances of a woman, but others were not void of sterner stuff, for when it became necessary to remove the person of Mrs. Valencia from the line of the fence which they were building, smiles and jests gave place to passion and force. When she took hold of the fencing materials for the purpose of preventing their use, as she lawfully might do, they were forcibly wrested from her. When she placed herself over the post holes, with intent to prevent the construction of the fence, and refused to move out of their way, as she had a lawful right to do, they laid violent hands upon her and forcibly removed her. It is true that when, notwithstanding her remonstrances and resistance, the defendant and

44

his party had succeeded in inclosing the lot and Mrs. Valencia with a fence, and she had determined to abandon the contest and withdraw from the field, the defendant knocked off two or three boards to afford her a place of exit. This cannot be accepted, however, as an act of gallantry, notwithstanding it is claimed as such by counsel for defendants, especially when we find it accompanied by a rap upon her knuckles with his hammer. Having been given with a hammer, and with force sufficient to leave a wound, the law cannot regard the blow as playful, though it may have been accompanied by the bow of a Grandison or the smile of a Chesterfield. A blow is no less a blow because it is dealt with a smile or pointed with a jest.

We have, then, an actual and peaceable possession on the part of the plaintiffs—an invasion by the defendant with a multitude of people not needed for the purpose of taking peaceable possession of his own—not only a show of force, but its actual use in repeated instances while engaged in effecting an entry and ouster. To hold, in view of these conditions, that the plaintiffs are entitled to no relief under the statute against forcible entries would be to join the defendant and his party in laughing at a woman vainly struggling with a superior force for her legal rights, and in setting at defiance the plainest and most salutary provisions of law.

It is suggested by counsel that the Court below was controlled in its judgment by the case of *Thompson* v. *Smith*, 28 Cal. 527. We find no parallel between that case and this, and we think the difference between them too obvious for comment.

Judgment and order reversed and new trial ordered.

Neither Mr. Chief Justice CURREY nor Mr. Justice RHODES expressed any opinion.