JENNINGS T. SHELBY, RESPONDENT, *v.* WILLIAM HOUSTON, J. L. FARRINGTON, AND C. ROEHLE, APPELLANTS.

CAUSES OF ACTION UNDER THE STATUTE OF 1866 IN RELATION TO FORCIBLE ENTRIES AND DETAINERS.—They are, First—Forcible entry; Second—Forcible detainer, of which there are two kinds—one defined in the second, and the other in the third sections; and *fraud*, as an adjunct of each.

COMPLAINT IN FORCIBLE ENTRY.—Forcible entry, forcible detainer in both forms, and fraud, may all be united in the same complaint, but should be separately stated; and, if not so stated, the complaint is bad on demurrer, but the objection is waived if not taken by demurrer.

VARIANCE BETWEEN COMPLAINT AND TESTIMONY IN FORCIBLE ENTRY—Is immaterial, and if the complaint charges one offense, and the testimony makes another, the Court should direct the complaint to be amended so as to conform to the testimony; but if this is not done, the judgment will not, for that reason, be reversed, but the Court below will be directed to cause the complaint to be amended, if the record shows that upon request it refused to do so, but not otherwise.

APPEAL ON FINDINGS ONLY.—If the appeal is allowed to stand upon the findings, the judgment will not be reversed, because all the facts requisite to sustain it have not been found; on the contrary, the missing facts will be presumed to be consistent with the judgment.

IDEM. — Before a judgment can be reversed, when the appeal stands upon findings only, it must appear that the facts which have been expressly found, or some of them, are repugnant to the judgment.

IDEM. — If the findings in an action under the statute in relation to forcible entries and detainers shows affirmatively that the entry or detainer was without *force, violence, fraud or menace,* they are repugnant to the judgment, so far as it may be for a forcible entry or forcible detainer, as defined in the second section of the statute, but not so far as it may be for a forcible detainer, as defined in the *third* section.

UNLAWFUL ENTRY — Is a peaceable entry made in bad faith — that is to say, without any *bona fide* claim of a legal right to enter.

IDEM. — A peaceable entry in good faith — that is to say, in the belief of a legal right to enter, is not unlawful, although it be wrongful.

PROOF OF TITLE IN UNLAWFUL ENTRY — Is allowed for the purpose of showing that the entry was made in good faith, but not for the purpose of trying title.

OCCUPANT. — To be an "occupant," within the meaning of the third section of the statute against forcible entries, it is not necessary to be present in person, or to be actually residing upon the premises — to be in the "peaceable and undisturbed possession" is sufficient.

APPEAL UPON FINDINGS IN UNLAWFUL ENTRY. — If an appeal stands upon the findings, and they fail to show whether the alleged unlawful entry was made in good or bad faith, and the judgment be for the plaintiff, it will be presumed that the entry was in bad faith, and the judgment be accordingly affirmed.

APPEAL from the County Court, City and County of San Francisco.

The defendants appealed.

The action was under the statute against forcible entries and detainers.

The complaint and findings were as follows:

### COMPLAINT.

Jennings T. Shelby, plaintiff in this suit, by Patterson, Wallace & Stow, his attorneys, now filing this, his amended complaint, complains of William Houston, J. L. Farrington, and C. Rorhle, defendants, and for cause of complaint shows that at the time of commencing of the wrongs hereinafter complained of, *he was, and for a long time before that had been in the actual, peaceable and quiet possession of,* and is still entitled to the possession of that certain piece or parcel of land, lying and being situate in the City and County of San Francisco, California, and bounded and described as follows, to wit: Commencing on the east side of Arkansas street, fifty feet north of Mariposa street; thence running northerly twenty-five feet, along the east line of Arkansas street; thence at right angles easterly one hundred feet; thence southerly,

and parallel with Arkansas street, twenty-five feet; thence westwardly one hundred feet, to the place of commencement; together with the dwelling house thereon—said lot being part of New Potrero Block, number two hundred and thirty-four.

Plaintiff further alleges, that while so in the actual, peaceable and quiet possession of said described premises, and entitled to the possession of the same, the said defendants did, on the 26th day of October, A. D. 1868, *in the night time*, and during the *absence* of the plaintiff from said premises, with force and violence, break into said dwelling house, situated upon said lot, and expelled the plaintiff therefrom, and still fraudulently and violently detain the possession of the said dwelling and premises from said plaintiff; that said plaintiff afterward, to wit, on the 28th day of October, 1868, went upon said premises, and then and there demanded of the said defendants the surrender of said premises to said plaintiff, which said premises said defendants refused, and still refuse, to surrender to said plaintiff.

Plaintiff further alleges, that being so in the peaceable and quiet possession of said described premises, and entitled to the possession of the same, the said defendants, with great force and violence, and with a multitude of people, unlawfully entered on said described premises, and with force and violence removed, put out and expelled the said plaintiff therefrom, and took possession of the same, and the defendants have ever since illegally, forcibly and unlawfully detained possession of the same from plaintiff, to his great damage, to wit: the sum of five hundred dollars. Plaintiff alleges, that the monthly value of the rents and profits of said premises is fifteen dollars. Plaintiff therefore prays for judgment against the said defendants, for the restitution of the above described premises, and for the damages suffered by said plaintiff by the said forcible and unlawful entry upon, and forcible and illegal detention of the above described premises, for the monthly rents and profits during the said unlawful detention, and for such other further relief as by law and right they may be entitled to, and for their costs in this behalf.

PATTERSON, WALLACE & STOW,<br>Plaintiff's Attorneys

FINDINGS.

*First*—That on the 27th day of October, 1868, the plaintiff was *peaceably* in the *actual* possession of the dwelling house, kitchen and shed situated on the tract of land de-

scribed in the complaint, and of the land covered by said dwelling house, kitchen and shed.

*Second*—That, on the said 27th day of October, and while the plaintiff was so peaceably in the actual possession of said dwelling house, kitchen and shed, and of said land, but *during the absence* of the plaintiff therefrom, the defendant entered thereupon, and took possession thereof, and from thence has continued in the possession of the said dwelling house, kitchen and shed, and the land thereby covered.

*Third*—That, at the time of the entry of the defendant, as aforesaid, the doors of the said house were not locked nor barred.

*Fourth*—That the said dwelling house, kitchen and shed, and the tract of land described in the complaint, were (at the time of said entry) within a larger tract of land containing ten and fifty-six one-hundredths acres, which said larger tract was *surrounded by a post and board fence, four boards high,* the greater portion of which fence had been erected by the plaintiff, and the remaining portion by the occupants of adjoining lands; and at the time of said entry by defendant, *the plaintiff, with his family, resided within the said enclosure, in another dwelling house erected by him.*

*Fifth*—That the defendant did not make the entry aforesaid with any actual violence, or make such entry by breaking open any doors, windows, or other parts of said dwelling house, kitchen, or shed, or by any kind of actual violence or circumstance of terror.

*Sixth*—That on the 28th day of October, 1868, the plaintiff went to the immediate neighborhood of said dwelling house, then in the possession of defendant, and on said larger tract, the defendant being then upon the porch of said house, and then and there, in the presence and hearing of the defendant, demanded of him the surrender of said dwelling house, kitchen and shed, and of the land covered by the same.

*Seventh*—That the defendant did not, for a period of five days after said demand, surrender the same or any part thereof to the plaintiff, nor has the defendant ever made such surrender.

*Eighth*—That the defendant did not by actual force, or with a strong hand, or by any menace or threat of violence, hold or keep possession of the premises, or any part thereof.

*Ninth*—That the said dwelling house was not inhabited at the time of defendant's entry, nor was there any furniture therein, except one broom; nor was the door of said house fastened when said entry was made.

*Tenth*—There was no fraud in the said detainer by the

defendant; nor was there any fraud in gaining possession by defendant.

*Eleventh*—The said entry by the defendant was without the consent, contrary to the will, and without the knowledge of the plaintiff.

The remainder of the case is stated in the opinion of the Court.

*Calhoun Benham*, for Appellants.

*First*—The complaint omitting, as it does, to allege that the plaintiff was the *occupant* of the premises, does not support the judgment.

The statute uses the word *occupant*. *Ex vi termini, occupant* means *one physically residing upon or using given premises in his proper person*. Used as the word is, in connection with the word *absence*, there remains no doubt it has that meaning. · If the statute did not contemplate physical occupation by plaintiff in his own person, why provide for an entry in his absence? An entry would be the same to him, whether he were present or absent    *   *   *.

*Second*—The complaint omitting, as it does, to allege that the plaintiff was the occupant of the premises *within five days preceding the entry*, does not support the judgment.

The statute, after denouncing an unlawful entry in the night, or during the occupant's absence, requires that the occupant should have been at the premises within the five days next preceding the entry. The fact, therefore, should appear on the face of the complaint. It does not. The allegation is *for a long time*, etc. It is indefinite. If the verdict found the fact, it would not cure the defect—the finding would be unauthorized. But it will be seen the fact is not found.

*Third*—The findings do not support the judgment. They do not show that the plaintiff was the occupant.

The language of the findings is, that * * * *the plaintiff was peaceably in the actual possession*. He might well have been and not have been an occupant. Besides, it may well be doubted whether these words of the findings are equivalent to the statutory words. The words of the statute, are

*peaceable and undisturbed possession*, and these cumulative, as already remarked, upon the force of the words *occupant* and *absence*   *   *   *.

*Fourth*—The findings do not support the judgment. They show there was no refusal to surrender the premises for five days after demand.

The finding on this point is, that the defendant did not, for a period of five days after said demand, surrender the same, or any part thereof, to the plaintiff, nor has the defendant ever made such surrender.

· Omission or failure to surrender, is not refusal to surrender. *Non constat* but that defendant would have given up the premises to plaintiff, if he had gone to receive them at the end of the five days after demand. The five days are of grace.

*Fifth*—The findings do not support the judgment. They contradict the complaint in a material point.

The complaint alleges that the plaintiff was expelled on the 26th of October, 1868, and kept out permanently, and the finding is, that the plaintiff was in possession on the 27th of October. The allegation of the complaint is absolute—no *videlicet* is used.

It is apprehended so positive and clear a variance, is fatal even on appeal   *   *   *.

*Sixth*—The defendants did not enter unlawfully. Conceding, for the sake of argument, that the defendants entered in plaintiff's absence, it must have been found they also entered unlawfully in other respects.

It was affirmatively found they entered without force and without fraud. Unless they entered without title, it follows they could not have entered unlawfully.

It did not appear they entered without title—it could not so appear. The plaintiff would not, and could not have been permitted to show it, if such were the fact. As the Court could not have heard direct proof of want of title, it had not the right to entertain presumptive proof of want of it. Proof is but proof, whether presumptive or direct.

Without the aid of the presumption that defendants had

no title, the statute was not satisfied—the entry was not *unlawful.*

Hawkins lays it down that, at common law, one could not only take his own, but that he could enter with force and arms.

Commenting upon Hawkins' *dictum,* Lord Keynon said that where one entered unlawfully, that is to say, by force or fraud, he could not intend he had a title. (*Rex* v. *Wilson,* 8 Term R. 461.)

And this is supposed to shake Hawkins' *dictum.* But it certainly leaves the implication that when one did not enter with force or fraud, the law will not hold he had no title.

We do not ask the Court to intend we had title; but as entry may be made, where it is given by law, so that it is made "in a peaceable and easy manner," we ask the Court, where an entry without anything to mark it as unlawful is shown, not to intend we had no title. In the criminal aspect of the action of forcible entry, the Court will not presume defendant guilty. In its civil aspect, the Court will not presume force or fraud; and, if we are to be presumed to be without title, and to have, therefore, made an unlawful entry, we are to be found guilty, in effect, at least, of one or the other, since they are the only modes of entry which the statute recognizes as unlawful.

The Judge below thinks it unlawful to go into another's close, and that certainly when one does more, as to go into it in the occupant's absence, or in the night, he is guilty of a forcible detainer, if he holds it.

It may be true that *prima facie* it is unlawful to enter another's close, but the rule prevails only in trespass or ejectment. It could be so held only in those actions, else the *right of entry* could not exist—and the first rule of jurisprudence, criminal and civil, that it is presumed a man has not done the wrong imputed to him, would be violated.

The opinion of the Court below, on this particular point, seems to be supported by *Thompson v. Smith* (28 Cal. 532.) There, the Court permit the defendant to show title to vindicate the good faith of his entry, which he could not do if it was forcible.

We did not offer title. Are we concluded? Does it stand confessed we were intruders, and that so our entry was unlawful? We admit we are at a loss to know whether the Court intended such a consequence to flow from the non-vindication of the good faith of his entry. We do not think it should.

We respectfully invite a re-examination of *Thompson* v. *Smith*. We persuade ourselves the Court will not go as far as it is contended that case warrants. We think it will not do to let the defendant in forcible entry show title to vindicate the good faith of his entry. If he shows title, it will not vindicate his good faith, unless it is paramount. It may seem to be paramount, and yet not be and he know it; and then the plaintiff must produce his own title, show its superiority—its being paramount to defendant's, and defendant's knowledge of that fact, and defendant fails, but only after he has had the advantage of a trial in ejectment—for such the trial will have been in effect.

Counsel further argued at length in support of this point.

*William H. Patterson*, for Respondent.

SANDERSON, J., delivered the opinion of the Court:

This action was brought under the Statute of 1866, in relation to forcible entries and unlawful detainers. (Stats. 1865–6, p. 768.) The first section of that statute defines a *forcible entry;* the second defines a *forcible detainer;* and the third declares that an *unlawful entry*, if made *in the night time*, or *during the absence* of the occupant of the premises, followed by a demand and a refusal to surrender for a period of five days, shall be deemed to be a *forcible detainer; provided*, that a party shall be deemed to be an *actual occupant* of lands within the meaning of that section, if he has been in the *peaceable and undisturbed possession* of such lands *within five days next preceding such unlawful entry*.

The case was tried by the Court below without a jury, and has been brought here upon the pleadings, findings and con-

clusions of law, which conclusions were in favor of the plaintiff.

The complaint contains two counts. The language of the first is, that at the time of the entry, " the plaintiff was, *and for a long time before that*, had been in the *actual, peaceable and quiet possession*, etc.  * * *  That while so in the actual, peaceable and quiet possession of said premises, the said defendants, on, etc.,  * * *  *in the night time*, and *during the absence* of the plaintiff, *with force and violence* did break, etc.,  * * *  and does *fraudulently* and *violently* detain the possession, etc.,  * * *  and that said plaintiff afterward, on, etc.,  * * *  went upon said premises and demanded possession, which was refused by the defendants, and still is refused."

In the second count, an " *unlawful* " entry, a " *forcible* " and " violent " expulsion of the plaintiff, and an " *illegal, forcible* and *unlawful* detainer," are all alleged without any demand for a surrender of the possession.

It appears from the findings that the premises in question (a lot 25x100 feet, with a dwelling house, kitchen and shed thereon), are a part of a tract of land containing about ten and a half acres in the City of San Francisco, which tract was surrounded by a post and board fence, four boards high, most of which had been erected by the plaintiff, and the remainder by the occupants of adjoining lands ; that at the time of the entry, the plaintiff was residing with his family in another dwelling house erected by him within this enclosure ; that the dwelling house into which the entry was made was unoccupied, and there was no furniture therein, except a broom ; that the doors were not fastened, and the entry was made without force, violence or menace of any kind, but was made in the *absence* of the plaintiff, and without his knowledge ; that the entry was made without fraud, and the possession was retained without fraud, force, violence or menace of any kind ; and that a demand for the surrender of the possession was made by the plaintiff, and the defendants had failed to comply with the demand for a period of five days thereafter.

*First*—The first two points made by the appellants are,

that the complaint does not support the findings, because, First—It omits to state that the plaintiff was the "*occupant*" of the premises ; or, Second—That he was the occupant "*within five days preceding the entry.*"

These points are made upon the theory that the cause of action shown by the findings, so far as they show any cause of action, is a *forcible detainer*, as defined in the *third* section of the statute, and that to maintain it the complaint must show, First—That the entry was made *in the night time*, or, if in the day time, *during the absence* of the plaintiff from the premises; Second—That the plaintiff was in the *actual* and not merely the *constructive* possession or occupancy of the premises within five days preceding the entry ; Third—That the entry was unlawful ; and, Fourth—That a demand for possession had been made, followed by a refusal to comply, continued for a period of five days.

The question as to how a complaint under this statute ought to be framed, came before us in the case of *Valencia* v. *Couch* (32 Cal. 342.)   We there held that the statute defined two distinct offenses : First—Forcible entry; Second—Forcible detainer.   That of the latter it gave two distinct definitions, one in the *second,* and the other in the *third* section ; that the statute also provided that *fraud* on the part of the defendant, if any there should be, should be considered as a feature of each offense, and a ground for special damages ; and that, therefore, there were, under the statute, four separate causes of action, or grounds for relief : First—Forcible entry ; Second—Forcible detainer, as defined in the *second* section ; Third—Forcible detainer, as defined in the third section ; Fourth—Fraud as an adjunct of each ; and that these causes of action might all be united in the same complaint, but must be separately stated, or the complaint would be demurrable upon that ground.   Our conclusions, so far, were founded upon the provisions of the Civil Practice Act, which are made applicable to proceedings under this statute. (Sec. 7.)   But we held, further, that this statute was more liberal in the matter of amendments than the Practice Act, which conclusion was founded upon the tenth section, which provides, in effect, that if the plaintiff sues upon one cause

of action only, and his testimony makes another, or if he sues upon two, and his testimony makes a third, it shall be the duty of the Court, of its own motion, to order the complaint to be amended, so as to suit the testimony. This provision distinguishes proceedings under this statute from proceedings under the Civil Practice Act, and affords a convenient and ready escape from all the consequences which usually follow a variance between the averments of the complaint and the testimony.

Tested by the foregoing rules, the complaint in this case is undoubtedly faulty. Although it contains two counts, yet each count is demurrable upon the grounds that it contains separate causes of action, which are not separately stated. It sets out a *forcible entry;* a forcible detainer, as defined in the *second* section of the statute, and *attempts*, at least, to set out a forcible detainer, as defined in the *third* section. The second count sets out an unlawful entry, a forcible expulsion, and an "illegal," forcible, and "unlawful" detainer. The defendants, however, did not demur upon the ground that separate causes of action were not separately stated, and this ground of objection was, therefore, waived.

Further—Tested by the foregoing rules, the alleged variance between the findings and complaint becomes a matter of little moment. If, as contended by counsel, the complaint failed to state the particular cause of action which the Court found from the testimony, it was the duty of the Court to order the complaint amended, and, doubtless, the Court would have done so had its attention been called to the matter. But, be that as it may, it is obvious that, under the very liberal provisions of the tenth section of the statute, we cannot reverse a judgment merely upon the ground that there is a variance between the complaint and the proofs, if the complaint states any cause of action whatever. The most that we could do would be to direct the Court below to cause the complaint to be amended; and even that will not be done where, as in this case, the record fails to show that the Court below, upon request, refused to order the complaint amended.

*Second*—It is next argued that the case made by the find-

ings does not fall within the statute against forcible entries and detainers.

The case has been brought here upon findings to which no exception was taken in the Court below, upon the ground that they were defective or wanting in any respect. We cannot, therefore, as counsel seems to suppose, disturb the judgment, because all the facts required in law to sustain the judgment have not been expressly found, if such should prove to be the case. As to such facts, if any there be, findings which will support the judgment are implied. (Prac. Act. Sec. 180; *Henry* v. *Everts*, 30 Cal. 426; *Sears* v. *Dixon*, 33 *Id*. 326; *Morrill* v. *Chapman*, 35 *Id*. 86; *Carpentier* v. *Small*, *Id*. 355.) We cannot, therefore, disturb the judgment, unless we find that some facts have been expressly found by the Court below which are repugnant to it.

It is expressly shown by the findings that the entry and detainer were without *force, violence, fraud* or *menace.* Such being the case, the finding is repugnant to the judgment, so far as it can be said to be founded upon either a forcible entry or a forcible detainer, as defined in the *second* section of the statute, or upon the fifth section in relation to fraud. This is conceded, and the only question we have to deal with in this connection is whether any of the facts expressly shown by the findings are inconsistent with the judgment, considered as a judgment for a forcible detainer, as defined in the *third* section. That section reads as follows :

" SEC. 3. If any person shall, in the night time, or during the absence of the occupant of any lands or tenements, unlawfully enter upon such lands or tenements, and shall, after demand made for the surrender of such premises for the period of five days, refuse to surrender the same to such former occupant, such person shall be deemed guilty of a forcible detainer, and may be proceeded against as herein provided for such offense ; *provided,* that the party shall be deemed the actual occupants of lands who, within five days preceding such unlawful entry, was in the peaceable and undisturbed possession of such lands or tenements."

It is claimed that the findings show that the entry was not unlawful, and that the plaintiff was not the occupant of the premises in the sense of this statute.

The question as to what constitutes an unlawful entry within the meaning of this statute has been repeatedly before this Court, and it has been uniformly declared to be a peaceable entry made in *bad faith*—that is to say, without any *bona fide* claim or color of a legal right to enter, and not a peaceable entry made in *good faith*, although wrongfully, that is to say, in the belief that there is a legal right to enter. (*Dickinson* v. *Maguirre*, 9 Cal. 48; *Janson* v. *Brooks* and *Bachman* v. *Whitney*, 29 *Id.* 220; *Thompson* v. *Smith*, 28 *Id.* 532.) In view of this construction, we further held, in the case last cited, that a defendant in an action for an unlawful entry might produce evidence of title, not for the purpose of establishing or trying title, but for the purpose of showing that his entry, if wrongful, was not made with a *wrongful intent*, but in *good faith*, and in the belief that he had a legal right to enter.

Upon the question whether the entry in this case was made in good faith, under claim and color of right, or with a wrongful intent, that is to say, wilfully, without any claim of right asserted in good faith, the findings are silent. Such being the case, a finding that the entry was made without claim or color of right is implied for the reason already stated.

Upon the question of occupancy, it is claimed that it was requisite for the plaintiff to show actual occupation or personal presence in the house within five days of the entry, and that, inasmuch as the finding expressly shows that such was not the fact, it is repugnant to the judgment.

This point is founded upon the use of the word "occupant" in the body of the section; but, in view of the *proviso*, we consider that the true intent and meaning of the Legislature is found in the words "peaceable and undisturbed possession." As it might do, the Legislature defined what is meant by the word "occupant," and we must look to the definition and not to the word. Looking, then, at the words "peaceable and undisturbed possession," we consider that a party who seeks relief under the *third* section is not required to show a possession which differs at all from the possession which he would have to show were he seeking relief under

the *first* or *second* sections.  We can see no sensible reason why a possession that is sufficient to sustain a charge of forcible entry should not also be sufficient to sustain a charge of unlawful entry, and we find nothing to the contrary in the language of the statute.

All the cases agree that, to sustain a charge of forcible entry, an actual, peaceable and exclusive possession must be shown ; but it has never been considered, so far as we are advised, that an actual residence—a personal presence—was, in all cases, indispensable to such a possession.  On the contrary, "actual possession," said Mr. Justice Baldwin, in *Minturn* v. *Burr,* "as much consists of a present power and right of dominion as an actual corporal presence in the house." (16 Cal. 109.)  In that case, as in this, the premises were empty and unoccupied ; but that fact was not considered inconsistent or repugnant to the charge of a forcible entry. Under the rule in that case, we hold that the plaintiff might have had "a peaceable and undisturbed possession" of the premises in question within five days before the entry, notwithstanding the fact that he did not reside in the house during any portion of that time.

Judgment affirmed.