EISELE v. ODDIE et al.

(Circuit Court, D. Nevada. March 21, 1904.)

No. 733.

1. FEDERAL COURTS—JURISDICTION—DIVERSE CITIZENSHIP—RESIDENCE—DOMICILE—PRIMA FACIE EVIDENCE.

Where plaintiff brought suit in a federal court sitting in Nevada against citizens of such state, the fact that plaintiff was living in Nevada at the time the suit was brought, while prima facie evidence that he was a citizen of that state, was not conclusive of such fact.

2. SAME—BURDEN OF PROOF.

Where, in an action in the federal court, jurisdiction was based on diverse citizenship, and defendant claimed that plaintiff had changed his domicile from another state to the state where the action was brought, the burden of proving such change was on defendant.

3. SAME.

To effect a change of domicile there must be residence in the new location, with an intention to remain there.

4. SAME—EVIDENCE.

Where plaintiff brought suit in a federal court sitting in Nevada against citizens of that state, and alleged that he was a resident of California, and

¶ 1. Diverse citizenship as ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.

¶ 2. See Courts, vol. 13, Cent. Dig. §§ 885, 886.

testified that he had left California and gone to Nevada for his health, but intended to return, and considered California as his home, such testimony was sufficient to establish diverse citizenship, in the absence of proof to the contrary.

**5. TORTS—PLEADING—DAMAGES.**

In an action for tort, damages for injuries which do not necessarily result from defendant's wrongful act, but flow therefrom as a natural and proximate consequence, cannot be recovered unless specially pleaded.

**6. SAME—BREACH OF THE PEACE—POSSESSION AND DESTRUCTION OF PROPERTY—MOB VIOLENCE—ACTIONS.**

Where plaintiff was deprived of the possession of a lot and his tent and personal property thereon by acts and appearances of defendants tending to inspire plaintiff with a just apprehension of violence and intimidation, and calculated to cause a breach of the peace, plaintiff was entitled to recover such damages as he sustained therefrom in an action on the case.

**7. SAME—ABANDONMENT OF PROPERTY.**

Where plaintiff was compelled by force to sign an agreement renouncing all right to a certain lot on which he had lived in a tent for a period of six months, and bound himself to vacate the same within ten days, and he thereafter slept in a dug-out constructed in another place for two nights, during which time his effects still remained in the tent, to which he was returning, when defendants destroyed the same, plaintiff's acts did not constitute an abandonment of the lot on which the tent was located.

**8. SAME—AMOUNT IN CONTROVERSY.**

The amount or value in controversy stated in plaintiff's complaint is the sole test of federal jurisdiction, so far as concerns courts of the first instance.

**9. SAME—DAMAGES—DUTY TO LESSEN.**

Where defendants wrongfully and by force ejected plaintiff from certain land on which he was living in a tent, destroyed and burned the tent, carried certain of his goods to a poor person, to be used as fuel, and scattered the remainder on the ground, plaintiff owed defendants no duty to gather such fragments, but was at liberty to leave them and recover such damages as he sustained by their loss.

## Action to Recover Damages for Wrongful and Unlawful Acts and Injuries.

The amended complaint avers: That plaintiff is a citizen of California, having his domicile in Inyo county, in that state. That defendants are citizens and residents of the state of Nevada. That the matter in controversy in this action, exclusive of interest and costs, exceeds in value the sum of $2,000. That on the 20th of January, 1902, at Tonopah, Nye county, this plaintiff was in the actual and peaceable possession of lot No. 11 in block D, a certain tent and other improvements upon said lot, together with certain household furniture, bed and bedding, $135 in the currency of the United States, a large amount of clothing, books, certain valuable papers, family photographs, canvas, and other personal property. That while he was so the owner and in possession of said property the defendants, "with a multitude of people, riotously, with violence and strong hand, and by force of arms, wrongfully and unlawfully entered thereon, and assaulted plaintiff, and in a rude, angry, and threatening manner forcibly ejected plaintiff, and put him out of said land and tenements, and threatened to expel plaintiff from the town of Tonopah," to the damage of plaintiff in the sum of four thousand dollars. And for a separate and distinct cause of action alleges: That defendants, in the manner stated in the first count, unlawfully entered on said lot, and appropriated

---

¶ 8. Jurisdiction of Circuit Courts as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.

to their own use and carried away and destroyed 10 bills of the currency of the United States of the value of $135; one tent, $45; and then enumerates divers small articles such as stools, chair, table, bedstead, clothing in a sack, books, reading matter, etc.; "a Bible, $200; family photographs, $200; gold spectacles presented plaintiff by his mother, $100; confectionary receipts, $20; papers of plaintiff's home estate, $30; valuable private letters, $100; valuable documentary papers, $150—the entire value of said personal property being $991; and that said Bible, family photographs, gold spectacles, confectionary receipts, papers of home estate, private letters, and documentary papers have no special value except to plaintiff, and plaintiff has thereby been damaged in the sum of nine hundred and ninety-one dollars"; and demands judgment against said defendants and each of them: "(1) For the sum of four thousand dollars damages under the first cause of action stated; (2) for the sum of nine hundred and ninety-one dollars damages under the second cause of action stated."

The defendants, in their amended answer, virtually deny each and every allegation in the complaint. They deny that at the time of the alleged entry plaintiff was in possession of the premises, or any part thereof, or that any articles of personal property, except the tent, were on said premises; deny that they or any of them, with a multitude of people or otherwise, except defendants Booth and Butler, entered said premises at all; and allege that one Mrs. McGregor was at said time the owner, and one Clay Peters the lessee, of said premises, and said Clay Peters was in the actual possession thereof; that defendants Booth and Butler entered said premises upon and by authority of said owner and lessee.

The testimony on behalf of the plaintiff tended to establish the allegations of the complaint, except as to his ownership of the property. A wide latitude was allowed both parties in the introduction of testimony. The record shows, among other things, that the plaintiff went upon the lot and moved into the tent June 15, 1901, and continuously remained in the possession thereof until the acts hereinafter stated occurred. About the 20th of December, 1901, Clay Peters, Dr. Hudgens, and others notified him that a committee had been organized to remove him from the premises, and informed him that he had better get off the lot. On January 7, 1902, plaintiff signed a paper, which reads as follows: "Know all men by these presents, that I, Chris Eisele, hereby renounce all claim, right, or title of any kind or nature to the ground upon which the tent in which I am now living is situated in Tonopah, Nev., and I hereby agree and bind myself to vacate said ground within ten days from the date of this instrument. Dated this 7th day of January, 1902: C. C. Eisele. Witness: A. L. Hudgens." He did not leave at the time stated. He gave the reasons why he did not leave, and said, "I did agree to go when a man put a shotgun under my nose." About January 17th he had a talk with the defendant Oddie, and told him he would leave the ground, as he had heard that the committee was going to pull his tent down. On the 18th he moved some wood and provisions, stove, blankets, and some clothing. On the 19th he was fixing up a dug-out to go into. He slept at the dug-out on the 18th and 19th. He further testifies that all the things mentioned in his complaint were on the lot January 20th; that the defendant Booth broke open the door of his tent and entered it. He remonstrated. Forcible and threatening words were used by some of the defendants. Plaintiff went away, got his dinner, returned, and "saw from the looks of things they were going to destroy the tent." He remonstrated, and said the tent could be removed without breaking it. The defendant Booth had a shotgun, and informed plaintiff that he had better get away, or it would be worse for him. Plaintiff called on Oddie to "stop this," and his request was met by laughter. There were a number of people present. The defendants put a rope around the tent, attached it to a wagon, dragged it a short distance, when it collapsed, "and the tent and its contents spilled out," and were set on fire and burned up. Then the defendants "came back with the wagon, and put the balance of the stuff laying on the ground in the wagon." Plaintiff begged the driver to haul the things to the "dug-out." Some of the defendants said they would take care of that, and one of them said to plaintiff, "Now you get out of town within four hours." What was hauled away in the wagon was given to a widow lady for fuel.

The·testimony of the defendants tended to support the allegations of the defendants' answer, except as to the alleged possession of the premises by Clay Peters. Other testimony is referred to in the opinion.
See 120 Fed. 695.

N. Soderberg and A. Chartz, for plaintiff.
Campbell, Metson & Campbell and Kenneth M. Jackson, for defendants.

HAWLEY, District Judge (orally). It is claimed by defendants that plaintiff cannot maintain this action. This contention is based solely upon the ground that the testimony offered on behalf of plaintiff is wholly insufficient to sustain the action. The specific grounds of this contention are: (1) That diverse citizenship has not been established; (2) that the action cannot be sustained as an action of forcible entry; (3) that it cannot be sustained as an action in trespass quare clausum fregit. In connection with these points it is argued that the plaintiff's own evidence shows "that he had abandoned his possession" of the lot and tent.

1. Upon the trial plaintiff testified that he was a gardener by occupation, and had resided in Inyo county, Cal., for about 29 years; that in June, 1901, he left Inyo county, and went to Tonopah, as much for his health as for any other purpose, as the doctors advised him that it would be good to get out in the hills. "Q. At the time you left Inyo county, what intention did you have about returning? A. I intended to return. That is the only place I would live—in the state of California—and I have always said so. Q. Have you ever had, during the last twenty-nine years, any residence except Inyo county, California? A. No, sir; only during the short time I have been in Tonopah, and been delayed here. Q. Your home during all those years has been in Inyo county? A. Yes, sir. Q. And it is there now? A. Yes, sir; that is my residence, my home." The cross-examination did not bring out any fact in opposition to his testimony in chief. In June, 1901, the plaintiff was an actual, bona fide resident and citizen of Inyo county, Cal. According to his sworn testimony, he did not abandon his residence there. He left to go to Tonopah, Nev., with intent to return to Inyo county, Cal. The mere fact that he sold his gardening tools before leaving Inyo county does not, of itself, prove that he left without intent to return. The circumstance that he took most of his clothing with him is of little significance one way or another. The fact that plaintiff was a laborer with but little means, and owned no dwelling or land, and was without any family, is a matter proper to take into consideration, with other matters, as to his intention, but does not, of itself, justify the court in declaring that it was not his intention to return in the face of his positive evidence upon this point. Citizenship, not the place of residence, is the test of jurisdiction. The fact that plaintiff was living in Nevada at the time this suit was brought was prima facie evidence of his citizenship here, but it is not conclusive. A person may be a citizen of one state or country and reside for the time being in another. McDonald v. Salem Flour-Mills Co. (C. C.) 31 Fed. 577; Collins v. City of Ashland (D. C.) 112 Fed. 175, 178, and authorities there cited. In Chiato-

vich v. Hanchett (C. C.) 78 Fed. 193, this court held that "a defendant who is a citizen and resident of another state than that of the plaintiff is entitled, under the act of 1887–88 [Act Aug. 13, 1888, c. 866, 25 Stat. 433 (U. S. Comp. St. 1901, p. 508)], to remove to the federal court a suit brought against him in the state court, although at the time the suit was commenced and the petition for removal filed he was temporarily residing in the state where suit was brought." The place where a person lives is taken to be his domicile until facts adduced establish the contrary. Anderson v. Watts, 138 U. S. 694, 706, 11 Sup. Ct. 449, 34 L. Ed. 1078; Tracy v. Tracy, 62 N. J. Eq. 807, 810, 48 Atl. 533. The question of a change of domicile is mostly one of intention of the party, as to which his declarations must control, unless overthrown by acts inconsistent with them. Where a change of domicile is alleged, the burden of proving it rests upon the party making the allegation. To effect a change of domicile, there must be residence in the new locality, and intention to remain there. Mitchell v. United States, 21 Wall. 350, 353, 22 L. Ed. 584; Desmare v. United States, 93 U. S. 605, 609, 23 L. Ed. 959; Marks v. Marks (C. C.) 75 Fed. 321, 324; Succession of Simmons (La.) 34 South. 101, and authorities there cited.

In Chambers v. Prince (C. C.) 75 Fed. 176, the court said:

"A party may be a resident of a place, and yet not domiciled there; for, while he is resident there, still if he does not intend to make that his permanent place of abode, but has always the 'animo revertendi,' there can be no doubt that the mere fact of his residing for the time being in a place does not establish a domicile at the place of residence. A man always retains his domicile if he leaves it 'animo revertendi.'"

In the present case some portions of the testimony, if left to a mere inference, might seem unreasonable, but there are no facts stated that are inconsistent with the sworn statement of the plaintiff that it was his intention to return to California.

In Sharon v. Hill (C. C.) 26 Fed. 337, 342, the court discussed the question herein involved at some length. Among other things, it said:

"'Citizenship' and 'residence,' as has often been declared by the courts, are not convertible terms. Parker v. Overman, 18 How. 141 [15 L. Ed. 318]; Robertson v. Cease, 97 U. S. 648 [24 L. Ed. 1057]; Grace v. American Cent. Ins. Co., 109 U. S. 283 [3 Sup. Ct. 207, 27 L. Ed. 932]; Prentiss v. Barton, 1 Brock. 389 [Fed. Cas. No. 11,384]. (Numerous other cases might be cited upon this point.) Citizenship is a status or condition, and is the result of both act and intent. An adult person cannot become a citizen of a state by simply intending to, nor does any one become such citizen by mere residence. The residence and the intent must coexist and correspond; and though, under ordinary circumstances, the former may be sufficient evidence of the latter, it is not conclusive, and the contrary may always be shown; and when the question of citizenship turns on the intention with which a person has resided in a particular state, his own testimony, under ordinary circumstances, is entitled to great weight on the point."

In that case it was admitted that the plaintiff had resided in California for a great number of years, but he testified "that he never intended to become a citizen of California, or cease to be a citizen of Nevada." In commenting upon the whole testimony, the court said:

"The evidence only proves that the plaintiff was generally an inhabitant of this city (San Francisco) for a few years before the commencement of this

128 F.—60

suit. But when we consider that the plaintiff swears positively that he never intended to become a citizen of this state, and that no act of his while here is inconsistent with such purpose, * * * the mere fact of the plaintiff's bodily presence here for one or ten years, under the circumstances, is of very little moment in determining his citizenship."

The testimony given by the plaintiff is, in my opinion, sufficient to show a diversity of citizenship between the parties.

2. Can this action be sustained upon the testimony given by the plaintiff? This question is not, as claimed by defendants, whether it can be sustained as an action of forcible entry and unlawful detainer, or for trespass quare clausum fregit. There were doubtless several remedies afforded plaintiff by the law of which he might have availed himself. He could have brought an action of forcible entry and unlawful detainer, and prayed for restitution. Cutting's Comp. Laws Nev. §§ 3822, 3823. Forcible entry and unlawful detainer is an indictable offense as a misdemeanor in every state in which common-law crimes are recognized, and also in states where by statute it is made a criminal offense. 9 Ency. Pl. & Pr. 25, 45; Ex parte Webb, 24 Nev. 238, 241, 51 Pac. 1027. The testimony in such cases would, of course, have to be applicable to the relief sought. But the answer to defendants' contention that the action cannot be maintained because the complaint did not demand restitution of the property, which is the main remedy of an action of forcible entry and unlawful detainer, the recovery of damages being merely incidental thereto, is found in the fact that this is not an action pure and simple of forcible entry and unlawful detainer, either civil or criminal, or of an action of trespass quare clausum fregit, although in several respects it is somewhat analogous thereto, especially in the fact that possession, not title to the property, is alone involved, and that force was used by defendants in making an entry upon the premises. In actions for forcible entry the title to the property is not in issue either in civil or criminal proceedings, and, as a general rule, the question of possession is alone involved, and the title cannot be inquired into. It is a summary proceeding, in which an actual peaceable possession of the premises must be shown to have been forcibly taken away or invaded by the defendant; and, when this is shown, the law will restore the possession to the party complaining, even if the defendant be in fact able to show a title. The reason of this rule is that, if a party have a paramount title to property which is in the actual possession of another, who persists without a valid right in retaining that possession, he shall not do himself justice by force, for this would be contrary to the law of the land, but he shall apply to the courts of justice provided for such purposes, where his rights will be recognized and enforced. In the present case it clearly appears that plaintiff was deprived of the possession of the lot and tent by acts and appearances tending to inspire a just apprehension of violence, and calculated to cause a breach of the peace. The books are full of cases where it has been said that actual physical force is not necessary; that it is always sufficient if the entry is attended with such a display of force as manifests an intention to intimidate the plaintiff, or deter him from defending his rights, or to excite him to repel the invasion of his possession and thus bring about a breach of the peace.

The character of this action must be determined by the pleadings. It is an action to recover damages for the alleged wrongful and unlawful acts charged to have been committed by the defendants to the plaintiff's injury. It presents some unusual and unpleasant features and peculiar facts, and in this respect may be said to be exceptional in its character. But the right to recover damages for wrongs and injuries is well settled. The plaintiff, having different remedies, may select the form of action which will give him the relief he seeks. The original complaint was defective (Eisele v. Oddie [C. C.] 120 Fed. 695), because it did not apprise the defendants of the nature of the claims against them, and the extent thereof. A statement of the injuries, with a general averment of the sum as to the damages, would only authorize the recovery of such damages as would naturally and ordinarily follow from such injuries. The complaint was amended to make it more specific, especially so as to set forth causes of special damages; the general rule being that special damages, which are the natural, but not necessary, result of the injury complained of, must be specifically alleged. Such injuries do not necessarily result from the defendants' wrongful act, but flow from it as a natural and proximate consequence; hence they must be specially alleged, in order that the defendant may have notice thereof, and be prepared to meet the same upon the trial. 5 Ency. Pl. & Pr. 719. This case furnishes the necessity for the strict enforcement of this rule. As was said by the court in Pueblo v. Griffin, 10 Colo. 366, 367, 15 Pac. 616:

"If from any peculiarity in the circumstances or situation of the injured party other loss accrued to him thereby, such peculiarity must be alleged and proven to justify the recovery of such damages."

There was no demurrer to the amended complaint, upon which the action was tried. Its sufficiency is not questioned. The only legal objection made by the defendants is to the sufficiency of the evidence to sustain it.

3. Was the plaintiff in possession of the lot and tent at the time the defendants, with a multitude of people present, forcibly removed the tent and burned it? It is claimed that "plaintiff's own evidence shows that he had abandoned his possession," first, because of his written agreement renouncing all claim or right thereto, and promising "to vacate said ground in ten days"; and, second, because he left the premises on January 18, 1902, and never slept in the tent thereafter, the removal of his tent occurring on January 20th. The fact that plaintiff had agreed to leave and surrender his rights within 10 days, and did not do so, although he had started to remove his goods and chattels, and had slept in a dug-out for two nights, did not deprive him of the possession of the premises. The testimony shows that some of his effects were still in the tent, and he was on his way there, and was present when the removal occurred. There cannot be any abandonment of the property while the party is in possession of any part of it. Mitchell v. Carder, 21 W. Va. 277, 285, and authorities there cited. Plaintiff was not a mere intruder upon the premises. He had been in the actual possession of the premises for a period of six months. The specific acts which are required to constitute a sufficient possession

are dependent upon the conditions and circumstances of each case; but the controlling principles applicable to all cases are embodied in the general statement "that any overt act indicating dominion and a purpose to occupy, and not to abandon, the premises, will satisfy the requirements as to possession." Vol. 13 Am. & Eng. Ency. Law (2d Ed.) 746. In actions for forcible entry and unlawful detainer it has been held—in line with the rule above stated—that actual residence upon the premises is not always necessary. Valencia v. Couch, 32 Cal. 339, 91 Am. Dec. 589. This case is also an interesting one upon the question as to what constitutes force. And that continuous presence is not required. Giddings v. The '76 Water Co., 83 Cal. 96, 23 Pac. 196; Sitton v. Sapp, 62 Mo. App. 197, 205. Locking the doors of a house and taking the key constitutes, in ordinary cases, evidence of an actual possession of the house or lot upon which it stands. Haley v. Palmer, 9 Dana, 321; Sitton v. Sapp, supra; Davidson v. Phillips, 9 Yerg. 93, 30 Am. Dec. 393.

4. In reply to the suggestion of counsel that the proofs do not show that the value of the property in controversy exceeds $2,000, it is only necessary to say that the general rule is that, so far as concerns courts of the first instance, the amount or value stated in the plaintiff's complaint is the sole test of jurisdiction. West v. Woods (C. C.) 18 Fed. 665, and authorities there cited; Hill v. Gordon (C. C.) 45 Fed. 276; Western Union Tel. Co. v. White (C. C.) 102 Fed. 705, 707; Butters v. Carney (C. C.) 127 Fed. 622. There are no exceptional facts in this case which take it out of this general rule.

5. Upon the merits but little need be said. Conceding that the defendants, who claimed to be acting for the real owners of the lot, under all the circumstances of this case, might have had the right to enter upon the premises and peaceably remove the plaintiff therefrom, yet neither they nor the other defendants had any right to remove him by force, or to destroy his property. The law was clear, and the courts were open for the protection of the owners of the property, if, as defendants contend, the plaintiff had no legal right thereto. The committee consisting of defendants and others had no right to take the law into their own hands. It may be that some of the acts and conduct of the plaintiff, his situation and surroundings, as well as other circumstances in the case, may have caused the belief on the part of the defendants that he was not acting in good faith in asserting ownership to the lot and tent, and that his promises could not be relied upon, and induced them to hasten the proceedings in a summary way, without any actual intent on their part to proceed in a wanton or malicious manner. These matters may be considered in mitigation of some of the damages. But all the acts of the defendants were without authority of law, and were of a character which cannot be sanctioned in a court of justice, however meritorious their motives or intent may have been. In whatever way or manner the cause of action may be treated, there could be no justification or excuse for the conduct of defendants. The burning of the tent and contents of itself shows the result that is so often liable to happen when self-constituted committees assume the right to enforce the law in their own manner. The excitement produced by a multitude of people proceeding in a riotous

manner always has a tendency to result in an utter disregard of the law. Hence it is that statutes are passed and actions at law maintained to prevent such injuries or wrongs as were committed in this case, regardless of any question as to the real ownership of the property.

As to the damages that should be allowed. The plaintiff was certainly very liberal as to the value of the heirlooms, the Bible, family photographs, gold spectacles, private letters, and documentary papers, and also of the value of the damages he sustained by the "wrongful invasion of his constitutional rights." There was extravagant testimony on both sides, and a substantial difference of opinion, and some conflict, especially as to what articles were in the tent at the time of its removal and destruction; but these things need not be discussed. The indignities, insults, and insinuations, partaking of the nature of threats against the plaintiff, should not be entirely ignored. One other point should be noticed. The plaintiff testified that he left $135 in bills in a box in the tent, and that it was taken and destroyed by the defendants. The defendants at the trial sought to question this fact, but I am not prepared to say that the plaintiff's testimony upon this point was so unreasonable as to make it unworthy of belief. The most that could be said in favor of defendants would be that they did not see it, and did not know or believe it was there. Without further comment, I quote, as applicable to this case, the language of the court in Eten v. Luyster, 60 N. Y. 252, 260, where the question was presented as to whether or not the leaving of money in a stable was so unreasonable that the defendants ought not to be charged with its destruction. In that case the court instructed the jury:

"It is for you to consider all the circumstances of this case, and, in view of the testimony as to this man's position and habits, and his manner of conducting business, and in the light of all the evidence before you, to pass upon the probability or improbability of an intelligent man in his condition keeping his money in this way. It is not for me to say that a man should have done so and so with his money. It is for you to judge whether he took such a course as a man in his class of life, in that kind of business, and with his opportunities for knowledge, would reasonably take under such circumstances. You are to be guided by the facts and circumstances in determining this question."

The court, in discussing the question as to the character of damages which the plaintiff was entitled to recover, said:

"The plaintiff owed no duty to the defendants, and was not called upon to gather up the fragments of his scattered and broken chattels, but was at liberty to leave them where the defendants left them, and look to the latter for their value. They were out of his possession by the tortious act of the defendants, by whom, and whose acts, they were lost or destroyed. The plaintiff complains of the pulling down and destruction of his building and the taking and conversion of his personal property, as well as the damages sustained by a loss of his business. The latter claim was excluded from the consideration of the jury by the court, but evidence of the other items of loss and damage were clearly within the allegations of the complaint, and admissible. For all loss occasioned by the trespass, whether in the destruction of the chattels or the loss of money that was kept upon the premises, the plaintiff was entitled to recover. That the money was kept in an unusual place did not take it out of the protection of the law, or affect the liability of the defendants for their tort. They acted at their peril, and must respond for the consequences. The loss of the money, although the defendants may not have sus-

pected its presence, was the direct and necessary consequence of the acts of the defendants."

Considering all the facts and circumstances of this case, I assess the damages at $500. Upon filing the proper findings of fact herein, let judgment be entered in favor of plaintiff for the sum of $500, and for costs.