# WHEELING.

## MITCHELL et al. v. CARDER.

Submitted January 11, 1883—Decided March 17. 1883.

(WOODS, JUDGE, Absent.)

1. A party, who is in possession of lands under claim of title, makes it his as against the world except as to the true owner, and it remains his as against all persons entering without his consent, unless he abandons the land; and he may recover the possession of the land by a writ of unlawful entry and detainer, even of the true owner, who has entered upon the same without the occupant's consent and without his abandonment of such land. (p. 283.)

2. If such person in possession of such land leaves it with the intention of returning and taking possession of it at a future time, he does not abandon such land, even though no one be upon the land for a considerable length of time. An abandonment takes place, only when one in possession leaves with an intention of not again resuming possession; for abandonment is a question of intention; and mere lapse of time does not constitute abandonment, though it is proper to be considered in ascertaining the intention of a party, who has left land, which he has been occupying. (p. 285.)

3. So too the promptness or delay of a former occupant in instituting suit or demanding possession of one, who has entered on the land, is proper evidence to be considered in ascertaining such intention of the first occupant; and indeed a wide range should be allowed, for it is generally only from all the surrounding facts

and circumstances, that the intention of an occupant of land can be ascertained, when he has left its possession. (p. 288.)

4. But if such an occupant of land having no valid title has in point of fact so abandoned the possession of land with no intent of resuming it, then any one may take possession and hold it against him, even though he promptly institute proceedings to recover such possession; but the burden of proving clearly such abandonment rests on the one who asserts it. (p. 290.)

Writ of error to a judgment of the circuit court of the county of Jackson, rendered on the 12th day of March, 1881, in an action of unlawful detainer in said court then pending, wherein A. B. Mitchell and J. W. Mitchell were plaintiffs, and Z. P. Carder was defendant, allowed upon the petition of said Carder.

Hon. Robert F. Fleming, judge of the sixth judicial circuit, rendered the judgment complained of.

GREEN, JUDGE, furnishes the following statement of the case:

At the September term, 1864, of the circuit court of Jackson county, one James M. Reynolds obtained a judgment against the defendant, Z. P. Carder, for two hundred and twenty-five dollars and interest and cost, which was duly docketed and immediately thereafter a subpœna in chancery was issued in a suit brought in said circuit court to enforce this judgment out of the defendant's lands.

On October 1, 1865, this subpœna was returned by the sheriff; the return being, that the defendant was not found in his bailiwick. On January 19, 1866, the plaintiff in this chancery suit filed his affidavit, that the defendant, Z. P. Carder was a non-resident of the State of West Virginia; and at the March rules 1866, the plaintiff, Reynolds, filed his bill asking to charge the two tracts of land, the subject of controversy in this cause, with the payment of this judgment improperly described as having been rendered in 1866, but otherwise described as corresponding with said judgment, as the property of the defendant, Z. P. Carder.

On September 19, 1866, a decree was rendered in this cause, which recited, that order of publication had been duly executed against the defendant, Z. P. Carder, and that the

bill was taken for confessed against him, and thereupon the court, Hon. George Loomis presiding, rendered a personal decree for two hundred and twenty-five dollars, the amount of said judgment and for eighteen dollars and one cent the costs of the suit at law and also for the costs of this chancery suit; and further decreed, that unless this was paid in thirty days W. W. Flesher, as commissioner, should sell said lands of the defendant, Z. P. Carder, or so much thereof as was necessary for cash in hand, after advertising the time and place of sale for twenty days, at the front door of the court house of Jackson county. No bond was required to be given by the special commissioner.

On February 4, 1867, W. W. Flesher, the special commissioner, sold said lands of the defendant, Z. P. Carder, for three hundred and fifteen dollars and eighty-seven cents which was just the amount decreed against Z. P. Carder. This report of the sale was confirmed by the court and a deed ordered to be made to the purchaser, Wm. T. Greer, and the decree further directed the commissioner to convey said land to said Wm. T. Greer, *with covenant of general warranty on behalf of Z. P. Carder.* On February 18, 1868, such a deed with such warranty was executed pursuant to said decree. On the 20th day of September, 1874, Z. P. Carder, filed a petition for a rehearing of said cause alleging, that there were palpable errors in the decrees and proceedings above mentioned, and J. W. English was selected as the special judge to try the cause, and Z. P. Carder filed his answer in said cause. It denies, that any such judgment as was stated in the bill was ever rendered against them, but admits that a similar judgment was rendered in 1864, though there was no personal service on him in said common law suit; but in it he was proceeded against only as a non-resident by order of publication. He did not appear in this common law suit nor did any attachment issue against him, and the judgment was therefore a mere nullity and was afterwards, at the March term 1875 of said circuit court, set aside, reversed and annulled; and he claims that this pretended judgment was no lien on his lands.

On the 4th of September, 1879, a final decree was rendered in said cause, and the decree rendered in this cause directing

a sale of the land of Z. P. Carder, as well as the decree confirming the sale and directing a deed to be made to W. T. Greer, the purchaser, were set aside, annulled and held for naught, and the plaintiff's bill was dismissed and the defendant was decreed his cost against the plaintiff. Z. P. Carder owned said lands by a conveyance of it to him in 1854, and he was in possession of it for several years prior to this sale by the special commissioner in 1867. After this deed to Greer had been made he conveyed this land to one Kent, who lived upon it for about ten years, and in the spring of 1880 he re-conveyed this land to Greer, who took possession of it and on the 10th day of April, 1880, he leased this land to the plaintiffs A. B. and J. W. Mitchell for one year from March 1, 1880. The rent was ten dollars and the lessees agreed to take possession of and hold the same for this term and to surrender the possession at the end of said term. Before, however, the conveyance was made by Kent to Greer, the defendant, Z. P. Carder, had, in 1879, instituted an action of ejectment against Kent for this land, which was still pending. When this lease was made in April, 1880, one of the plaintiffs, J. W. Mitchell, took possession of this land and sowed on it some oats and flax, and his brother A. B. Mitchell, the other plaintiff, also occupied the premises. He was unmarried, but had a bed in the house situated on this land and some housekeeping articles and ate there, and when he left the house temporarily he fastened it up leaving these articles there. In April or May of 1880, this house which had been so occupied by A. B. Mitchell was burned down. How it happened to be burned does not appear, but when it was burned it was not occupied, as A. B. Mitchell who had occupied it had moved to his home not on this land and had taken with him his bed, which he had in this house. After the burning of the house, the plaintiffs had for a time some cattle upon the place and went to it frequently; but they were all taken out by about October first. A. B. Mitchell took out his cattle first, but the mare and colt of J. W. Mitchell, remained on the place till about October 1, 1880, and there were some hogs of the plaintiffs still remaining on the place when the defendant, Z. P. Carder, entered on and took possession of the place on November 2, 1880.

But from a time as far back as April 1, 1880, the outside fencing of the said land was down in two or three places and the inside fencing was open, so that stock could pass from one field to another and the stock of the country were in the fields running at large, and the land had all the appearance from and after August 1, 1880, of abandoned property. It was used as commons and was not apparently under the control or in the possession of any person. A. B. Mitchell had gone back to his home elsewhere than on this land, but how far from it the record does not show though he does not appear after August, 1880, to have exercised any control over this land, and whatever control was exercised over it after that time was exercised over it by J. W. Mitchell. In October, 1880, he went to live at a place some fifteen miles from this land, and before that during the summer and fall, he was travelling about with a machine for shaving staves, in which business he was engaged, having given up farming. He says he was at the kitchen or smoke-house on this land on Sunday morning just before the defendant, Z. P. Carder, took possesion of it. This kitchen or smoke-house was near the dwelling-house, which had been burned and was still standing. He says, that he nailed up the door of this smoke-house and left it nailed up, and this is the only act of control over this land, which he appears to have exercised for some months; he does not state why he nailed it up and there appears to have been no apparent reeson for his so doing, as this smoke-house had nothing in it.

When the defendant, Z. P. Carder, took possession of this land on November 2, 1880, there was no one upon the land and no personal property of any kind upon it. The door of this smoke house was then open and the fencing was down as stated before, and there were on the place then two cattle, one belonging to some person unknown and the other to the defendant, Z. P. Carder. There were then probably some hogs roaming over the lands, but they were not seen by the defendant, Z. P. Carder, and among these hogs were some of the hogs of the plaintiff probably. The next day after Z. P. Carder took possession of this land, A. B. Mitchel and J. W. Mitchel sued out a writ of unlawful detainer against him for the possession of said land containing some

two hundred acres; and on March 12, 1881, the defendant plead, that he was not guilty of unlawfully withholding from the plaintiffs this land, and neither party requiring a jury, the court was by consent of parties substituted in lieu of a jury to hear the evidence and try the case.

The facts above stated were proven and the court thereupon found for the plaintiffs and adjudged, that they recover of the defendant possession of this land and their costs, and a writ of possession was awarded them.    The defendant moved for a new trial, which the court refused and he took a bill of exceptions, in which the facts proven as above stated are certified; and on the ·petition of the defendant, a writ of error has been awarded him by this Court to this judgment.

*Henry C. Flesher* for plaintiff in error.

The judgment complained of should be reversed, because it was contrary to law and evidence.

The plaintiff in error entered upon the land *bona fide,* under his legal title thereto.    He used no force to make such entry, and he has a lawful right to take possession of his land, if he could do so without force.    *Moore* v. *Douglass,* 14 W. Va. 708; Minor's Inst. Vol. 4, pl. 1, p. 1, § 111.

Cattle and goods cannot be substituted as agents to hold possession.    No authority need be cited to sustain their proposition.

The possession of the defendants in error must be an actual possession of the land.    *Olingi* v. *Shepherd,* 12 Gratt. 462.

He must show that he was turned out forcibly, or by one having no right.    *Id.*

No appearance for defendant in error.

GREEN, JUDGE, announced the opinion of the Court:

The record in this case shows, that the plaintiffs, the Messrs. Mitchell, ought not to have recovered the possession of the land in controversy unless it can be inferred from the evidence, that they were in possession of said land on November 2, 1880, when the defendant below, Carder, entered upon and took possession of the land.    If they were then in such possession, they had a right in this proceeding

to recover the possession of this land, even though they had no valid title to it and the defendant, Carder's title was perfect. They claimed the land under one Greer, who being in possession of and claiming title to it, made a *bona fide* lease of it to them, and their lease had not yet expired. Greer it is true, claimed title to this land under a deed made by a special commissioner authorized by the decree of the circuit court of Jackson, to convey this land to him. But this decree had by a subsequent decree of the court been set aside, reversed and annulled, and the deed made under it thus became null and void. Greer had taken possession of this land before this decree was thus annulled, and so far as this record shows, he was holding possession of it under a *bona fide* claim of title when he leased it to the Messrs. Mitchell and put hem in possession there of. He had therefor so far as is shown by the record, no valid title to the lands except such as arose from his having possession of it under a *bona fide* claim of title.

Of course the title of the Messrs. Mitchell to this land was also invalid, except that they had such title as Greer, their landlord had, that is, such title as adversary possession alone would confer. Their title then, resting in adversary possession alone, of course if this possession was abandoned by them, any other person without doing them any wrong could enter on and take possession of this land. Such entry as against them would be lawful, and they could not in this sort of action or proceeding recover possession. And if the court could not in this proceeding recover of a stranger, who took possession of this land when the possession was vacant, they would not of course recover it if in this preceeding of Carder, who claimed to have title to the land. But, if they could recover it of a stranger because they had not abandoned the possession of this land, they could also in this proceeding recover it of Carder, though his title was ever so good.

In this proceeding he stands in no better attitude than any mere stranger. It is true, that Carder had apparently great ground of complaint on account of the gross injustice and wrong, which the circuit court of Jackson county did him, when it ordered a deed for this land conveying his title to

be made to Greer, with general warranty of the same on the part of and in the name of Carder. This was but little if anything else than a judicial robbery of him. A judgment had been rendered against him by that court, in a common law suit brought by one Reynolds. Carder was never served with any summons in this suit, but was proceeded against, as he alleges and I suppose truly, though the record before us is in this respect quite imperfect, only by order of publication unaccompanied by any attachment; and he never appeared in this common law suit, yet the court without any jurisdiction in the case rendered a personal judgment against him, and even this judgment had been set aside; yet on this judgment Reynolds brought a suit in chancery in said court to enforce the supposed lien of this pretended judgment. Carder was a non-resident of the State and was not served with any process in this chancery suit, and though he did not appear, and there was no attachment in the case, the circuit court rendered a personal decree against him and ordered the sale of his land by a special commissioner, who was not required to give any bond, and who, strange to say, was authorized to sell this land for *cash* on twenty day's notice given only by posting the notice of sale at the court house door. This sale was made and Greer became the purchaser, bidding for it only the amount of the pretended judgment against Carder and the costs. This sale was confirmed by the said court, and a deed was made conveying this land with general warranty of title, as against Carder, by a special commissioner under the order of the said court; under this deed Greer took possession of this land.

A portion of these judicial outrages were redressed, when subsequently the special judge presiding in said court revoked, set aside and annulled all these unjust decrees and dismissed the bill. But the court did not restore the possession of this land to Carder, and it is not for us in this case to enquire into the justice of the former decrees in this cause or whether the defendant, Carder, ought not by the final decree rendered in this cause to have been restored to the possession of his land. One thing is certain, he had no right to redress himself any wrongs he may have sustained, either by forcibly taking possession of his land or by entering on it peaceably

while it was in the possession of Greer or of his lessees, the Messrs. Mitchell. If these lessees however abandoned this land so that it was vacant as to possession, then Carder or indeed any one else might have entered upon it without doing any wrong to the Messrs. Mitchell.

The only question therefore to be decided in this case is, had the Messrs. Mitchell on November 2, 1880, when Carder took possession of this land, abandoned it. If they had not, the judgment of the circuit court must be affirmed and if they had, it must be reversed. Of course there can be no abandonment of land while a party in person or by any agent is in possession of any part of it. But the reverse of this proposition is not necessarily true, though a party and every agent of his be absent from the land; it may be for months or even years, yet it will not necessarily follow, that this land has been abandoned so as to justify a stranger in taking possession of it in the absence of one, who had held it in possession claiming title to it. If such a person, who has been in the possession of the land leaves it, with the intention of returning, he does not abandon it. Lapse of time during such absence does not constitute abandonment, though it may be given in evidence for the purpose of ascertaining the intention of the party; but abandonment can take place only when one in possession leaves with the intention of not again resuming possession. It is therefore a question of intention.

When title by prior possession is once shown there is no presumption of its loss; but an abandonment must be made to appear affirmatively by a party relying on it to defeat a recovery of the land. See *Moon* v. *Rollins*, 36 Cal. 333. A party thus abandons the possession of land, when he leaves it free to the occupation of the next owner, whoever he may be, without any intention to repossess it and regardless and indifferent as to what may become of it in the future. See *Richardson* v. *McNulty*, 24 Cal. 345; *St. John* v. *Kidd*, 26 Cal. 263; *Warring* v. *Crow*, 11 Cal. 369; *Keane* v. *Cannovan*, 21 Cal. 291; *Bell* v. *Bedrock Tunnel and Mining Co.*, 36 Cal. 214.

These California decisions are in their reasoning sustained by decisions elsewhere. It cannot be, that if a person in possession of land claiming title to it leave it for a tempo-

rary purpose with an intention of returning, another can treat his possession of the land as abandoned and lawfully enter upon the land in opposition to him and take possession thereof in the temporary absence of the previous possessor. Such conduct is justified neither by religion, morality nor the law. It as naturally and almost as inevitably leads to breaches of the peace, as would the forcible entering on the possession of another. See *McLaughlin* v. *Mabury*, 4 Yeates 537; *Lessee of Clemmins* v. *Gottshall et al*, 4 Yeates 334. See also, *Miller* v. *Cresson*, 5 Watts & S. 284; *Heath* v. *Biddle*, 9 Pa. St. 273; *Davis* v. *Perley*, 30 Cal. 630; *McGoon* v. *Ankeny*, 11 Ill. 558.

This last case was an application of the principle of abandonment to personal property, and some of the other cases referred to were cases of the possession of public lands, more or less influenced by statuory law. But we conclude that these and other cases which might be referred to fully sustain the general principles we have laid down in determining what amounts at common law to an abandonment of land, which has been in the possession of a party claiming title to it, but having none except that derived from possession. When such abandonment takes place, any one else may take possession of the land lawfully as against the party, who has thus abandoned the posession; and he can not be ousted therefrom by an action of unlawful entry.

We will now apply this law to the facts in this case. The Messrs. Mitchell were certainly in the possession and care of this land in the month of April or May, 1880. They claimed it under a lease from Green, which expired March 1, 1881. The land contained about two hundred acres, was enclosed and divided into fields, and had on it a dwelling-house, presumably a very indifferent one, and near this dwelling-house was a smoke-house. The land in its then condition was of but little value, the rent which the Messrs. Mitchell were to pay for it being only ten dollars for a year, and they only rented it for a single year. They sowed on it some oats presumably a small quantity and some flax, and while engaged in preparing for their crops one of the parties, an unmarried man, had a bed in this house and slept and ate there, but he took his bed away and moved to his home probably during

the month of April or May, 1880, and shortly thereafter the house on this place was burned down. How this happened does not appear, but so far as the evidence shows this burning was without the knowledge or agency of Carder, who had some years before brought an action of ejectment for this land, which was still pending. For a short time after this house burned down, the Messrs. Mitchell continued to control this land and to occupy it, having on it cattle and hogs, and superintending the land and keeping up the fenceing. But the plaintiff, who was married and appears to have exercised the principal control of this place, concluded early in the summer of 1880 to give up farming and engage in shaving staves with a machine, which he had bought. This required him to travel over the country from place to place, and this land, as appears by the evidence, was abandoned entirely by the Messrs. Mitchell. As early as August, 1880, its condition was shown to have been a commons for the cattle and hogs of the neighborhood; the outside fence being down in several places, and the inside fenceing being in such a condition that cattle could pass from one field to another. One person who was hauling through this land during the month of October, 1880, did not see either of the Messrs. Mitchell on it during that month. He asked leave to haul through it that fall of the defendant, Carder, as the land appeared to be in the possession of no one and he then regarded it as commons and abandoned. It is true, that among the other hogs running over this land were some belonging to the plaintiffs, and one of the plaintiffs, J. W. Mitchell, had a mare and a colt pasturing on this land in September or October, 1880; but it was then the season for pasturing cattle in that neighborhood, and their hogs appears to have been there only in common with the hogs of others in the neighborhood, the place being open for any cattle or hogs to pasture on.

The Messrs. Mitchell, do not appear after August, 1880, to have paid any attention to this land or to have exercised any control over it more than others. The only time that it is proven, that either of them was on this land after August, 1880, except to take from it this horse and colt, was just before the defendant, Carder, took possession of it, when J. W.

Mitchell states, that he passed through the land and nailed up the smoke-house door.    Why he did so he does not state, nor is his reason for so doing apparent as there was nothing whatever in it to be preserved.    It was again open perhaps the next day and when the defendant, Carder, took possession of this land he found the smoke-house door open.

This isolated act of nailing up this door, apparently without a purpose, seems to me not to justify the conclusion, that the Messrs. Mitchell intended to resume possession and control of this land, especially when it is remembered, that the Mr. Mitchell who did this had been living for a month before that and was still living fifteen miles distant and was engaged in other business, having abandoned farming.    Under these circumstances it seems to me impossible to suppose, that they had any idea of resuming possession or control over this land. Their right to the possession of it would expire on March 1, 1881, and they could hold possession of it from November 1, 1880, for only four months, the three winter months and the month of November.    Surely land, whose use was worth only ten dollars a year, was worth so little, after the house was burned, during these four cold months, as to render it highly improbable under the circumstances, that the Messrs. Mitchell entertained then any intention of resuming possession and control, which they had abandoned, when the land would have been worth far more to them.

Despite all these circumstances, which would seem clearly to indicate, that the Messrs. Mitchell had abandoned this land and had for months preceding November 2, 1880, no intention of resuming possession or control over this land during the residue of their term, yet, there is one circumstance which is apparently inconsistent with this conclusion, and would seem to indicate a fixed purpose on the part of the Messrs. Mitchell to resume such possession and control, and that is, that as soon as the defendant, Carder, took possession of this land, they immediately brought this action of unlawful entry against him and asserted their right to the possession of this land.    Unless this inconsistency can be satisfactorily explained in connection with their abandonment of this land permanently, it alone would suffice to show, that they did always have the intention of resuming possession of this

land; and had not therefore abandoned it in the legal sense of abandonment.

A suit thus promptly brought would of itself ordinarily fully establish the fact, that there had not been an intention to abandon the land. In *Keane* v. *Cannovan*, 21 Cal. 303, the court says: "There are cases undoubtedly, in which an abandonment may be inferred from the lapse of time and the delay of the first occupant in asserting his claim to the possession against the parties subsequently entering upon the premises." Now the reverse of this is also obviously true, that "the institution of a suit by the first occupant asserting his claim to the possession against the party subsequently entering upon the premises immediately on his so entering, would ordinarily rebut any presumption of an intention on the part of the first occupant to abandon the land unless it can be shown, that his instituting the suit arose not from any desire to again occupy the land, but for some reason entirely consistent with a previous purpose of abandoning the land with no intent of resuming possession at any future time as indicated by the evidence in the case."

In this case the motive for instituting this proceeding by the Messrs. Mitchell, as is satisfactorily shown by the record, was not a desire to repossess themselves of this land for the few winter months which remained of their lease, but obviously arose from an anxiety to avoid litigation with this landlord Greer, who had inserted in their lease a provision to the effect that his "lessee would take possession and hold the same till March 1, 1881, and then would give possession of said land to said Greer." This provision of the lease they violated when they abandoned the possession of this land, probably as early as August, 1880, without any intent of ever again resuming possession of it. And had it been taken possession of by any person other than Carder, there is no probability that they would have complained. But they well knew when Carder took possession of it, that he would not surrender the possession on March 1, 1881, to Greer, and that he would thereby have a cause of action against them for violating these covenants in the lease. To avoid this difficulty doubtless they brought this suit, and not from any desire to repossess themselves of this land, which they had abandoned.

No doubt when they abandoned this land without any intention of resuming possession of it, they did not contemplate the probability of Carder's taking possession of it and thus involving them in a litigation with Greer, the landlord. But, if as we have seen, on November 2, 1880, when Carder took possession of this land, the possession of it was then vacant and it had been before that abandoned by the Messrs. Mitchell with no intent of ever again resuming possession of it, they can have no ground of complaint against Carder for an unlawful entry on this land, for he had under these circumstances, as we have seen, a lawful right to enter upon and occupy the same. The change of mind subsequently on the part of the Messrs. Mitchell because of the difficulty, in which they might become involved with their landlord, cannot render unlawful as against them the entry and possession of Carder, which had taken place when they had no intention of repossessing said land.

The court below assigns no reason for its judgment, but from the position of counsel I presume that he regarded this land as in the actual occupancy of the Messrs. Mitchell, on November 2d, 1880, when Carder entered upon it, because at that time some hogs of the Messrs. Mitchell were pasturing on it. But so far as this reason obtains it might as well been regarded in the possession of Carder, who had a cow pasturing upon it, or in the possession of any of the neighbors whose cattle and hogs were pasturing on it also; it being really a common, on which all cattle and hogs in the neighborhood, not enclosed, pastured.

For these reasons the judgment of the circuit court, rendered at the March term, 1881, must be set aside, reversed and annulled; and the plaintiff in error must recover of the defendants in error his costs in this Court expended. And this Court proceeding to render such judgment, as the court below should have rendered, doth find the issue for the defendant below, Z. P. Carder, and that of said proceedings against him he go without date and recover of the plaintiffs below, A. B. Mitchell and J. W. Mitchell, his costs, in the circuit court of Jackson county expended, including an attorney's fee of $10.

JUDGES JOHNSON AND SNYDER CONCURRED.

JUDGMENT REVERSED.